JOHN HOFFMAN, APPELLEE, V. McKEEN MOTOR CAR
COMPANY, APPELLANT.

FILED JANUARY 30, 1914.    No. 17,169.

Appeal: REVERSAL. Where there is a conflict of evidence upon material
facts which touch the cause of action or defense, in an action
at law, a reviewing court will not disturb the verdict of the
jury or the findings and judgment of the trial court unless it
is clearly wrong. *O'Chander v. Dakota County*, 90 Neb. 3. But
where a verdict is so clearly wrong as to induce the belief on
the part of the reviewing court that it must have been found
through passion, prejudice, mistake, or some means not apparent
in the record, it will be set aside. *Garfield v. Hodges & Baldwin*,
90 Neb. 122.

APPEAL from the district court for Douglas county:
HOWARD KENNEDY, JUDGE. *Reversed.*

*John A. Shecan* and *Charles L. Dundy*, for appellant.

*Weaver & Giller, contra.*

HAMER, J.

The plaintiff alleges his employment by the defendant
as a common carrier; that he and another were directed
to move certain boxes from one point to another, and
that the removal was to be accomplished through the use
of a truck; that he was without experience in such work;
that among the boxes which were required to be removed
was one which, with its contents, weighed from 500 to 600
pounds; that the plaintiff was placed between the handles
of the truck, and that when the box was tilted onto the
truck it fell with such force as to cause the plaintiff to
fall, and that the truck and the box both fell upon the
plaintiff and injured him; that the negligence of the de-
fendant is responsible for the injury; that the defendant
failed to provide suitable appliances for the accomplish-
ment of the work, and failed to furnish sufficient help to
safely perform the labor. The answer alleged the as-

sumption of risk on the part of the plaintiff; contributory negligence on his part; and that the injury was due to the negligence of a fellow servant. The reply was a general denial.

It is claimed by the plaintiff that the injury occurred because of the failure of the defendant to furnish a proper appliance for the removal of the box and sufficient help to assist in its removal. The plaintiff began the work on the 6th day of July, 1909. In company with other laborers he was moving boxes of supplies from the platform where they were unloaded from the cars. Twelve boxes had been removed before there was an attempt to remove the particular box which it is claimed caused the injury. This box appears to have been larger than the others. The evidence shows that the box was tilted up on one side and the nose of the truck was pushed under it, and then that the box and truck were pushed back together. The box appears to have been 50 inches in height, 38 inches in width, and 20 inches thick, or thereabouts. It is especially emphasized by the plaintiff that only one man assisted him in handling this box which caused the injury. There is evidence in the record that the plaintiff had two men to assist him; but the plaintiff contends that there was only one and the jury have so found. The jury found specially that the truck used was a "standard truck." They also specially found that such truck was a reasonably safe appliance. Therefore the question of the truck being a reasonably safe appliance is eliminated from the consideration of the case.

The plaintiff in his testimony seems to think that the box was too heavy for two men to handle. He does not testify that there was anything about the truck or about the box that he did not understand. He was raised on a farm in Bohemia. He was a blacksmith by trade, and followed his calling in Bohemia before coming to America. He had used a wheelbarrow at the smelter nearly six years in carrying lime, ore and slag. He was therefore used to the labor of lifting and wheeling heavy loads. He testified that the loaded wheelbarrow which he was in the

habit of using weighed 400 pounds, and that he was accustomed to handling it himself.

Anton Hanus, a witness for the defendant, testified that just before the plaintiff started to move the box it was standing upright on the platform; that two men tilted it over, and that the plaintiff put the nose of the truck under the box, and that after the nose was shoved under the box the box itself was tipped back by the two men who were helping to load it and that they let it onto the truck; that the plaintiff made a movement to pull the box toward him on the truck; that it was stationary when he started to pull it toward him, but that as he "broke the truck," that is, when the truck received on its upper framework the weight which the plaintiff was compelled to support, or to partly support, the truck and the box went down; that a Mr. Bell and a Mr. Haddakin assisted the plaintiff to handle the box at the time he was hurt. At this point it should be remembered that it is not claimed by the plaintiff that the man or men who helped him was or were careless in the manner of handling the box; neither is it claimed that the box was pushed by them or either of them with needless force over onto the framework of the truck. Anton Hanus also testified that he saw the box in the box car before it was unloaded, and that he and Mr. Vitlock took the box out of the box car on a "standard truck," and that they did so without help; that Vitlock had the handles of the truck, and that the witness tipped the box to permit the nose of the truck to go under; that Vitlock then took the box out of the car and placed it on the framework; that the witness helped him to stand it up.

There appears to have been nothing in the construction of the truck calculated to make it a dangerous implement, and the jury specially found that the particular kind of truck used was a proper appliance for the purpose intended. In supporting the truck, after the nose was pushed under the box, the box would rest upon the nose and base of the truck, and the framework to which the handles are attached would stand up in the air nearly

perpendicular, and then there would be no weight on them. If the truck should be so held that the center of gravity is in that part of it which may properly be des-ignated as the base, then there is no danger of the man who holds the handles being hurt. When the man who operates the truck takes hold of the handles, he gradually lets them down towards the ground so that he may be enabled to wheel the truck, and as he does so the box comes over with the framework of the truck, and the center of gravity moves back from the base of the truck toward the handles. As long as the man who operates the truck controls it, he cannot possibly be hurt, because the weight that he is called upon to support depends upon how far he lets the handles down. When he takes hold of the handles with the box resting on the base of the truck, he does not have to support any weight. If he should dis-cover, as he attempts to let the handles down, that the weight is likely to be greater than he can comfortably support, all he has to do is to push up the handles so that the framework of the truck resumes its former upright position, and he is at once relieved.

As the plaintiff had long been in the habit of handling a wheelbarrow that, when loaded, weighed 400 pounds, it will be seen that he was not required in handling this truck to handle much, if any, greater weight than he was accustomed to. It is true that he would have to hold the handles sufficiently near the ground to push the truck along, and as he let them down for that purpose the center of gravity would move back along the framework toward the handles, but the greater share of the weight would still rest on the front wheels, so that approximately the plaintiff would not have to support by a direct lift more than about one third of the entire weight held by the truck, being about 200 pounds if the box weighed 600 pounds, and correspondingly less if the box weighed less. As long as the box was handled prudently it could not have occasioned injury to the plaintiff. If we are right in our conclusion, the evidence shows that the injury oc-

curred because of the plaintiff's inefficiency or careless-
ness in handling the truck. We do not consider that the
case is a doubtful one. To us it seems very plain. Just
so long as the plaintiff handled the truck with ordinary
judgment and discretion, with just ordinary common sense,
he was in no danger whatever and could not be hurt.
There is no reason why the defendant should have antici-
pated this carelessness or inefficiency of the plaintiff,
whichever it may have been.

In *Fremont Telephone Co. v. Keeler*, 72 Neb. 613, it is
said: "He (the plaintiff) was not working with either
defective or dangerous implements. He himself borrowed
the ladder on which he ascended to his place of duty. There
was no hidden defect, either in the ladder on which he
stood, or in the hand-ax with which he drove the plugs,
or in the plug furnished him, that in any manner con-
tributed to the injury. It is not claimed that he was either
blind, or insane, or of such very tender years as to be
incapable of understanding the danger which must have
been obvious to one having eyes to see, when he under-
took to drive the plug. We therefore conclude that there
is no evidence in the record tending to show any breach
of any duty owed by the master to the employee, and,
although we doubt not that plaintiff received a painful
injury from the accident his misfortune is not, by any
evidence in the record, connected with any negligent act
on the part of his master."

In *Vanderpool v. Partridge*, 79 Neb. 165, *Lynn v. Glu-
cose Sugar Refining Co.*, 128 Ia. 501, was cited with ap-
proval. It is said in the body of the opinion in the last
named case: "This case, so far as the evidence for plaintiff
shows, may be well considered as close to the boundary
line between accident and negligence; but we are satis-
fied that the cause of the injury was not anything which
it was the duty of the defendant to anticipate and pre-
vent, if it might have been prevented in the exercise of
reasonable care, but was one of those uncertain happenings
as to which every one must take his chances." We think
the view of the case which we feel called upon to adopt

is supported by *Whalen v. Rosnosky*, 195 Mass. 545; *Central Granaries Co. v. Ault*, 75 Neb. 249; *Omaha Bottling Co. v. Theiler*, 59 Neb. 257; *Kilpatrick v. Richardson*, 40 Neb. 478; *Patton v. Texas & P. R. Co.*, 179 U. S. 658. In the last named case it is said: "If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

The rule is established that where there is a conflict of evidence upon material facts which touch the cause of action or defense, in an action at law, a reviewing court will not disturb the verdict of the jury or the findings and judgment of the trial court unless clearly wrong. *O'Chander v. Dakota County*, 90 Neb. 3. But where a verdict is so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake or some means not apparent in the record, it will be set aside. *Garfield v. Hodges & Baldwin*, 90 Neb. 122. So, also, will the findings and judgment of the trial court be set aside where they are clearly against the weight of evidence. *Roberts v. City of Lincoln*, 6 Neb. 352; *Southard v. Behrns*, 52 Neb. 486; *Symns Grocery Co. v. Snow Bros.*, 58 Neb. 516; *Frerking v. Thomas*, 64 Neb. 193.

In *Roberts v. City of Lincoln, supra,* it was said by Judge Maxwell, delivering the opinion of this court: "As the finding is clearly contrary to the evidence, the judgment is set aside and a new trial awarded."

In *Garfield v. Hodges & Baldwin, supra,* it was said by Judge Fawcett, delivering the opinion of the court: "The rule is well settled in this state that, where a verdict is so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record, it will be set aside and a new trial granted.

The evidence in the case at bar comes strictly within that rule."

In *Frerking v. Thomas, supra,* the seventh paragraph in the syllabus reads: "In reviewing a cause on appeal, where the findings and decree of the trial court cannot be reconciled with any reasonable construction of the testimony, the same will be set aside as unsupported by sufficient evidence."

In *Tyler v. Hoover,* 92 Neb. 221, there was a verdict against the defendant and a judgment in favor of the plaintiff. There was an examination of the evidence, and the verdict and judgment were set aside.

In *Garfield v. Hodges & Baldwin, supra,* there is a full examination of the evidence in that case, and on such examination it was determined that the verdict should be set aside. The evidence was involved and required a careful analysis, and this was clearly made by Judge Fawcett.

In the face of the above decisions of this and other courts, we are unable to conclude that the verdict and judgment are sustained by the evidence. The judgment of the district court is

REVERSED.

ROSE, J., dissenting.

In my opinion the judgment reversed is sustained by sufficient evidence that defendant was negligent in failing to furnish its employee with necessary assistance in the performance of his duties.

REESE, C. J., concurs in this dissent.