NIKOLA P. JERICH, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED FEBRUARY 26, 1915.   No. 17,971.

1. **Evidence:** PREPONDERANCE. "The preponderance of evidence is not determined alone by the greater number of witnesses who testify in favor of a party." *New Hampshire Savings Bank v. Dillrance,* 63 Neb. 412.

2. **Master and Servant:** INJURY TO SERVANT: SUFFICIENCY OF EVIDENCE. The evidence examined and set out in the opinion *held* sufficient to sustain the verdict.

3. **Trial:** MISCONDUCT OF COUNSEL. The record examined and discussed in the opinion *held* insufficient to show misconduct on the part of counsel for plaintiff.

4. **Evidence:** PREPONDERANCE: INSTRUCTIONS. Instruction No. 12, set out in the opinion, examined and *held* properly given.

5. ————: EVIDENCE AT FORMER TRIAL: ADMISSIBILITY. Where a witness is shown to be absent from the state, his testimony given at a former trial of the same cause between the same parties is admissible if otherwise unobjectionable.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Edson Rich, John A. Sheean, A. G. Ellick* and *B. W. Scandrett,* for appellant.

*Smyth, Smith & Schall, contra.*

FAWCETT, J.

From a judgment of the district court for Douglas county, in favor of plaintiff, in an action for personal injuries, defendant appeals.

On the day plaintiff received his injury he and a fellow workman were engaged in removing rivets from the boiler of a locomotive engine belonging to defendant, which was in defendant's shop for repair. At the same time two other employees of defendant were engaged in the same kind of work on the other side of the boiler. The two latter employees were using what is termed an "air gun" in their work. In order to remove the rivets one employee would hold a hammer over the head of a rivet and his associate would strike it with a sledge hammer, thus breaking or cutting off the head. It could then be driven out with a backing-out punch and sledge. When the air gun was used in connection with this work it was used in lieu of the backing-out punch and sledge. This air gun weighs about 25 pounds and consists of a plunger, a die and backing-out punch and the hammer itself. It is operated by com-

pressed air, which is conveyed to it through a long rubber
hose, which can be attached to iron pipes that are located
throughout the building, and which serve generally to con-
vey the air through the shops from the machinery where
it is generated. When the machinery is in operation there
is a continuous supply of air running through the pipes,
and it can be made to flow through the rubber hose or shut
off again by the turning of an angle cock at the point of
connection with the iron pipe. On the upper side of the
heel of the hammer is a trigger which controls the imme-
diate application of the air when connection between the
iron pipes and the rubber hose is open. When the air is
thus applied the plunger, which is a smooth, polished piece
of steel several inches long, moves back and forth inside
the hammer, like a piston, at a great rate of speed, striking
the die when the air is on in full force at the rate of 700
or 800 strokes a minute and with a pressure of about
120 pounds to the square inch. The force thus ap-
plied to a rusty rivet soon loosens it and drives it out.
The substance of plaintiff's testimony as to the manner in
which he received his injury is that, after he and his part-
ner, Hutchinson, had broken off the heads of a number of
the rivets with the sledge and hammer, Hutchinson left
him, for some purpose not disclosed, when he continued
alone the work of driving them out; that one of the rivets
stuck; that he stooped down so as to get a look at the other
end of it, for the purpose of ascertaining the nature of the
trouble. The boiler was resting upon wooden blocks from
18 to 24 inches in thickness, so that a person stooping
down could look under the boiler across to the other side
of it. Plaintiff testified that when he stooped down he
saw the air gun on the other side of the boiler; that the
hose to which it was attached was coiled and the gun was
lying on top of the coil, pointing towards him; that as he
looked the gun "went off" and the plunger left the gun
and struck him in the eye, the result of which was the
complete loss of the eye. The negligence charged is the
act of leaving the gun lying idle, without removing the

97 Neb. 49

plunger or shutting off the air. Just how the discharge of the gun was brought about is not shown.

The first assignment of error, and the principal one urged, is that the verdict is not sustained by the evidence. Plaintiff testified unqualifiedly that he had not had the gun in his hands nor used it on that day, but that the accident occurred as above outlined; while four witnesses testified for the defendant that plaintiff, prior to receiving the injury, had been using the gun on his side of the boiler. That there is a preponderance of witnesses in favor of the defendant on this material point is clear, and by reason chiefly of that fact it is urged that the great preponderance of the evidence is with the defendant and against the plaintiff. On this point the court, by instruction No. 9, told the jury: "If you believe from the testimony that the air gun had been taken by the plaintiff and was being used by him at the time he received his injury, then under the pleadings as set forth by plaintiff he cannot recover herein and you should find for the defendant." It is urged that the clear weight of the testimony shows that the verdict was contrary to this instruction. No witness claims to have seen plaintiff at the immediate time of the accident. They heard his outcry, and some of the employees, including Hutchinson, rushed to his assistance. Every witness who testified for defendant in relation to matters material to the case was, at the time of testifying, an employee of the defendant, unless we except Hutchinson. Hutchinson's testimony shows that he came from Virginia to Omaha shortly prior to the accident, which was in August, 1910, and worked for defendant until December 18 of that year, when he returned to Virginia; that he came to Omaha again when sent for by the claim agent of defendant, for the purpose of testifying in the case; that he returned to Omaha April 28, and from then until the time of the trial (in December) he had remained in Omaha at his own expense; that the railroad company furnished him a ticket to come to Omaha, but had not paid him anything else for coming and had made "no agreement at all" to give him anything. In *New Hampshire Savings Bank v. Dillrance,*

Jerich v. Union P. R. Co.

63 Neb. 412, Norval, C. J., tersely stated the rule thus: "The preponderance of evidence is not determined alone by the greater number of witnesses who testify in favor of a party." That has been the rule of this court from our earliest decisions to the present time, and has been many times announced and followed. We have followed that rule and refused to reverse cases many times when, if we had been the triers of fact, we might possibly have found contrary to the finding of the jury. As against this rule defendant cites *Garfield v. Hodges & Baldwin,* 90 Neb. 122, *Tyler v. Hoover,* 92 Neb. 221, and other cases, in support of the rule that, where a verdict is so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake or other means not apparent in the record, it will be set aside. Both rules are well established in this state, but in the cases where the rule invoked by defendant was applied, it will be found that there were facts and circumstances appearing in the record which so corroborated the testimony of the witnesses of the defeated party in the court below as to make it clear that the jury had not only discredited the witnesses on the one side, but had also disregarded the established facts and circumstances in evidence outside of the testimony of such witnesses, thus indicating that their verdict must have been found through passion, prejudice, mistake or some means not apparent in the record. In the present action there are no established facts and circumstances corroborating the witnesses of the defendant, the existence of which does not depend upon the oral testimony of such witnesses. After careful examination of the testimony, we cannot say that the jury were not warranted in believing the testimony of the plaintiff and discrediting that of the witnesses by whom it was sought to contradict him. We are compelled, therefore, to hold that there is sufficient evidence to sustain the verdict, and uphold the action of the jury sustained by an experienced trial court, all of whom saw the witnesses upon the stand, heard them give their testimony, and observed their demeanor while giving it.

The second assignment is misconduct on the part of counsel for plaintiff during the cross-examination of some of defendant's witnesses. It appears that plaintiff was at one time prosecuting an action in the federal court against defendant, upon the same cause of action involved here, which action was dismissed and the present action instituted. On the trial in that court it appears that defendant introduced as a witness Roscoe Grachiro, the employee who had been assisting Scarpello in using the air gun on the morning of and prior to the accident. Grachiro was in the courtroom throughout the present trial, and counsel for plaintiff, seeing that defendant was not going to offer him as a witness, for the possible reason, as counsel urges, that his testimony in the federal court was favorable to plaintiff, attempted to prove by the stenographer who reported the trial in the federal court Grachiro's testimony at that trial. Strenuous objection was made and sustained by the court. Plaintiff made several attempts by this witness to get before the jury Grachiro's testimony at that time. Counsel for defendant finally insisted that counsel should make his offer of proof to the reporter in the regular way. Thereupon the court ruled: "If you want to repeat any more, make the offer so that the jury cannot hear the questions and answers." When counsel made a similar attempt by a second witness, the tilt between counsel for the respective parties became somewhat animated. Judging from the record, we would say that it was a case of "give and take" between them. The trial court finally put an end to the matter in this apt language addressed to counsel for plaintiff: "I think you are within my rule yet, but you are right on the precipice and you ought to stop where you are. You know when you are on the danger line." We think the court outlined the situation very accurately in those words. Upon this admonition being given, counsel for plaintiff abandoned his attempt. We do not think the record shows any reversible error on this point.

The third assignment in the brief complains of instruction No. 12, given by the court on its own motion. By this instruction, the court told the jury: "By a preponder-

ance of the evidence is meant not necessarily the greater number of witnesses, but that amount of evidence which, taken on the whole, produces the stronger impression upon the minds of the jury and convinces you of its truth when weighed against the evidence in opposition thereto." It is conceded that this instruction states the law without question as applied to a normal situation, but it is insisted that in a case of this kind, where defendant introduced a large number of witnesses to sustain its position, and the plaintiff introduced but one, the natural effect of the instruction was to mislead the jury into believing that there was doubt about the credibility of the larger number of witnesess, and that the instruction in this case had the effect of accentuating this particular point. Counsel then state what, in their judgment, the jury should have been told under the situation presented, but they do not call our attention to any instruction of that kind as having been tendered by them and refused. We think the instruction was properly given.

The fourth assignment is that the court erred in permitting the reporter to read the testimony of a witness that had been taken at the former trial of the case in the federal court. This was the testimony of Doctor Owen, the oculist who treated plaintiff after his injury. When the offer was made, defendant admitted in the record "that Doctor Owen is out of the state and is now in the state of California," but objected on the ground that no sufficient foundation had been laid for the reading of his testimony. Counsel further stated that he did not object on the ground that the testimony was not exactly as given by Doctor Owen on the former trial, "where the parties were the same and where the subject matter and issues were the same, and where the doctor had been duly sworn under the forms of law," but based his objection "wholly on the ground that no sufficient showing is made as to why his deposition was not taken." The court did not err in permitting the testimony to be read. *City of Ord v. Nash,* 50 Neb. 335, where the rule is announced: "Where a witness is shown to be absent from the state, his testimony given at a former

trial of the same cause is admissible if otherwise unobjectionable." There were peculiar circumstances appearing in *Wittenberg v. Mollyneaux*, 59 Neb. 203, cited by defendant in support of its assignment of error, which show an exception to the rule above announced.

Some other minor points are discussed in brief of counsel, but everything necessary to a determination of the case is covered by the four formal assignments which we have considered. The only question in the case which has given us any trouble is that presented by the first assignment, viz., the sufficiency of the evidence. While we could easily have affirmed a judgment the other way upon the record before us, we feel that the facts will not warrant us in substituting our judgment for that of the trial court and jury in determining the important question—the credibility of the witnesses.

The judgment of the district court is therefore

AFFIRMED.

MORRISSEY, C. J., BARNES and HAMER, JJ., not sitting.