HILDUR PETERSON, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY ET AL., APPELLANTS.

FILED NOVEMBER 6, 1936. No. 29683.

*Kennedy, Holland, De Lacy & Svoboda,* for appellants.

*John A. McKenzie, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MESSMORE, District Judge.

GOOD, J.

This is an action to recover damages for personal injuries, alleged to have been caused by the joint negligence of Billie Young, the owner and driver of an automobile, and the defendant street railway company and William R. Reddick, one of its motormen.

It appears that after this action was commenced Young died, and the action was revived in the name of the administrator of his estate. No pleadings were filed by the administrator, and default was taken as against him. The trial in the district court, from which this appeal is taken, proceeded against the street railway company and its motorman, and resulted in a verdict for plaintiff, and such defendants have appealed.

The principal contention of defendants is that the verdict is contrary to and not sustained by the evidence.

The accident, resulting in the injuries of which plaintiff complains, occurred about 5 o'clock in the afternoon of December 20, 1933, on Sixteenth street immediately north of Farnam street, in the city of Omaha. Farnam street extends east and west and is intersected by Sixteenth street, extending north and south. The point is one of the busy business sections of the city of Omaha. The defendant street railway company operates a double track street railway on Sixteenth street. The east or northbound track is somewhat east of, and the west or southbound track is somewhat west of, the center of Sixteenth street. Young was driving his automobile west on Farnam street, had crossed Sixteenth street, and a short distance west of Sixteenth street his car stopped or stalled. He got out and cranked his car, and it appears that it was in reverse gear, as the car immediately started to run backwards. Instead of backing straight east, it ran in a curved direction and crossed the pedestrian lane of traffic on the north side of Farnam street, ran northeast, curved back to the northwest, and collided with one of the street cars on the southbound or west track at a point about 50 or 55 feet north of the north line of Farnam street.

Plaintiff was traveling west along the north line of Farnam street in the lane for pedestrians and was struck by this moving automobile, and was carried or dragged over the left end of the rear bumper of the automobile. The automobile was a Ford with a rumble seat, but the lid or door to the rumble seat was closed, so that the rear of the automobile presented a turtleback appearance. Plaintiff was lying over this turtleback on the rear license bracket and the rear bumper, and she was carried or dragged in this fashion until the automobile approached within eight or ten feet of the street car. Plaintiff testifies that at this point she was thrown from or rolled off the automobile onto the pavement. She claims that the street car ran forward and struck her head and ran over and cut off the fingers of her

right hand and part of the hand. Plaintiff is corroborated in her testimony, to some extent, that she was run over by the front left wheel of the street car. A number of witnesses, however, testify that the street car was stopped prior to the collision between it and the automobile. It is conceded, and the picture of the automobile in the record shows, that the left-hand rear part of the automobile struck the street car, and it is conceded also that the street car was struck on its left front end between the lamp and the corner of the car. A number of witnesses to the accident testify that the street car was standing still and had stopped because of other vehicles ahead of it and in such close proximity to the street car track that the street car could not proceed, prior to the time of the collision. One witness testifies that the street car moved forward after the collision some six or eight feet. No one testifies that it moved any farther forward than that. The evidence also is to the effect that the automobile was moving at a speed of from 12 to 20 miles an hour, and that the street car, prior to the time it came to a stop, was not moving more than four to five miles an hour. If plaintiff was thrown from the automobile, as she claims, some eight or ten feet in front of the street car, and the automobile was moving at 12 to 20 miles an hour, and the street car from four to five miles, it is evident that the collision must have occurred before the street car could move more than two or three feet. According to plaintiff's testimony she would still be in front of the street car at the time of the collision, and, if it moved no more than six or eight feet, it would be impossible for the street car to run over her as she claims. The evidence is that the distance from the front end of the street car to a point immediately back of the front wheels is about 18 feet. True, other witnesses for plaintiff place the point where plaintiff was thrown from the automobile to the pavement as much closer to the street car, some placing it within two or three feet. In that event, the street car could not have moved more than a foot prior to the collision, and, in the view most favorable to plaintiff, if it moved six or eight feet thereafter, she

would still be in front of the street car wheel and would not have been run over by it as she claims.

One witness, who gave a very clear description of the accident, testified that the automobile moved in a curve or arc of a circle. Plaintiff in her petition alleges that the automobile ran backwards and onto the east side of Sixteenth street. In that event, it was entirely past the southbound street car track. It must be borne in mind that the motorman, when he saw this automobile running backward, did not know that it was driverless; did not see or know that plaintiff was on and being dragged by the automobile; he had no reason to anticipate or expect that any one would be riding or was being carried on the rear bumper of the automobile, and he testified that, in fact, he never saw her on the automobile at all. In any event, when he saw this automobile pass eastward and east of the track on which his street car was moving, he would have no reason to anticipate that it would curve back and come into collision with the street car, until, at least, it had curved and turned back towards the northwest. At the speed with which the automobile was moving, it would take less than three seconds from the time it came into the motorman's view until the collision occurred, and, from the time it would be apparent to him that it was curving back to the northwest and might come in collision with his street car, little more than one second could have elapsed. Under such circumstances, where the motorman had the duty of keeping a lookout in front and at the right, where vehicular traffic might interfere with the passage of the street car, we doubt if it could be said that the motorman was guilty of actionable negligence in failing to realize that the automobile would come into contact with the street car, even if it was moving as claimed by the plaintiff. The evidence on behalf of the defendants is that plaintiff remained on the automobile until it collided with the street car and was struck and wedged in between the two vehicles, and that her hand was probably mangled when the bumper of the automobile struck the bumper of the street car.

The rule of law applicable is that plaintiff must prove by a preponderance of the evidence that the injury of which she complains was negligently inflicted by the defendants, or by the joint negligence of the owner of the automobile and the street railway company and its motorman. The physical facts disclosed by the record render it impossible that plaintiff could have been injured in the manner to which she testifies. The front wheels of the street car are about 18 feet back from the front end of the car. No one testifies that the street car moved more than six or eight feet, and it was a physical impossibility for plaintiff to have been in the position in which she claims she was injured, if her other evidence is true. In this state of the record, we are forced to the conclusion that the verdict is not sustained by the evidence.

The following established rule is applicable to the situation disclosed by the record: "When it is clear that material testimony has been disregarded by the jury, and which if considered and given due weight, would require a different verdict from that returned, a new trial will be granted." *Dunbier v. Day*, 12 Neb. 596, 12 N. W. 109; *Exchange Bank v. Gifford*, 102 Neb. 324, 167 N. W. 69.

It is evident that the jury must have disregarded uncontradicted evidence in the record that was material to the question before them for determination.

We think it is clear that the verdict is so clearly wrong as to induce the belief that it must have been found through passion, prejudice, mistake, or some means not apparent in the record. This court has held: "A verdict so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record, will be set aside and a new trial awarded." *Garfield v. Hodges & Baldwin*, 90 Neb. 122, 132 N. W. 923. To the same effect is *Hoffman v. McKeen Motor Car Co.*, 95 Neb. 238, 145 N. W. 257.

It follows necessarily that the judgment should be and is

REVERSED.