AUGUST J. POSPICHAL, APPELLANT, v. ROBERT V. WILEY ET AL., APPELLEES.

79 N. W. 2d 275

Filed November 16, 1956. No. 33962.

*Leo F. Clinch* and *Davis & Vogeltanz,* for appellant.

*Frederick M. Deutsch* and *William F. Manasil,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Garfield County. August J. Pospichal brought this action against Robert V. Wiley and his employer, the American Salt Corporation, to recover for injuries sustained by him and damages to his truck, a 1948 1-ton Chevrolet pick-up, claiming Wiley's negligence in operating his car, a 1952

Packard sedan, caused the accident which resulted in the injuries and damages of which complaint is made. Wiley filed a cross-petition whereby he sought to recover from Pospichal for injuries he personally suffered and for damages to his car, both of which resulted from the accident, claiming it was the negligence of Pospichal in driving his truck that caused the accident and his resulting injuries and damages. Upon trial a jury found neither Pospichal nor Wiley had established a cause of action against the other and rendered a verdict accordingly. Pospichal filed a motion for new trial against both defendants and, from the overruling thereof, has taken this appeal. For convenience we shall, when referring to the appellees separately, refer to them as Wiley and the company.

The accident involving appellant and Wiley happened about 4:30 p. m. on Friday, December 4, 1953, on State Highway No. 11 at a point about 16 miles north of Burwell, Nebraska. There had been a snowstorm or blizzard on Thursday, December 3, 1953, which, to some extent, had drifted the snow and, at the point of the accident which was just south of the crest of a hill, a rather long and deep snowbank had formed across the highway. A lane for travel had been cut in this drift and the accident happened in this lane when the parties' truck and car met almost head-on, the left front of the car and the left front of the truck coming together. Both appellant and Wiley were injured and the truck and car damaged.

Appellant contends the verdict of the jury was against the evidence. In support of this contention he cites the following principles:

"A verdict so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record, will be set aside and a new trial awarded." Garfield v. Hodges & Baldwin, 90 Neb. 122, 132 N. W. 923. See, also, Hoffman v.

McKeen Motor Car Co., 95 Neb. 238, 145 N. W. 257.

"When the judgment is clearly against the weight of the evidence, it is the duty of the court to set it aside." Nebraska Mutual Ins. Co. v. Borden, 132 Neb. 656, 272 N. W. 767. See, also, Bentley v. Hoagland, 94 Neb. 442, 143 N. W. 465.

But, in considering these principles we must review the record, since a verdict was rendered for appellees, in the following manner: "In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757. See, also, Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Fuss v. Williamson, 160 Neb. 141, 69 N. W. 2d 539.

In reviewing the evidence in the foregoing manner there is a jury question when the evidence with relation to negligence is conflicting or such that minds may reasonably reach different conclusions therefrom with regard to its existence. See, Hickman v. Parks Construction Co., 162 Neb. 461, 76 N. W. 2d 403; Scottsbluff Nat. Bank v. First State Bank, 162 Neb. 475, 76 N. W. 2d 445. As stated in Price v. King, 161 Neb. 123, 72 N. W. 2d 603: "Where different minds may reasonably draw different conclusions from the evidence, or there is a conflict in the evidence as to whether or not negligence or contributory negligence has been established, the question is for the jury."

From the evidence the jury could have found that the snowdrift, which had formed across highway No. 11, started a short distance south of the crest of the hill and extended south on the highway for a distance of some 225 to 300 feet; that it extended into a curve in the road where the road is partially in a cut along the side of a hill, which hill is to the west, there being a ravine and

lower ground to the east; that a one-way lane, about 9 feet in width, had been cut through this drift by means of a snowplow; that the snow along the east side of this cut or lane, which had a slight curve in it where it followed the curve in the road, was between $2\frac{1}{2}$ and 3 feet high while that to the west side was between 7 and 8 feet high; that Wiley, who was coming from the north, entered the lane first, doing so just after passing over the crest of the hill; that he proceeded into it for some distance at about 35 miles an hour before he noticed appellant's truck about 100 feet away; that appellant was, at the time Wiley saw his truck, just about to enter the one-way lane; that appellant was, at that time, driving about 35 miles an hour; that appellant did not see Wiley's car until it was about 60 feet from him; that appellant did not attempt to stop his truck, as is indicated by the fact there were no skid marks south of the point where the car and truck came together; that appellant was driving his truck about 30 miles an hour when the collision occurred; that Wiley attempted to stop his car by applying the brakes, as is evidenced by about 44 feet of skid marks north from the point of impact, but was unable to do so because the highway was icy from the snow packed thereon; that the accident, or point of impact, occurred about 45 feet from the south entrance to the lane, which lane was 225 to 300 feet in length; and that upon impact both cars stopped immediately, the truck facing slightly northwest in the direction of the highway and the car slightly southeast, its back end having skidded sideways toward the west. We realize appellant testified otherwise but the members of the jury did not have to believe him and, from a careful study of the record, we can understand why they did not.

As stated in 1 Blashfield, Cyclopedia of Automobile Law and Practice (Part 2, Perm. ed.), § 749, p. 686: "* * * where snowdrifts or other conditions have left only a narrow lane open for travel, and one motorist

has already entered the lane, it is the duty of another driver approaching from the opposite direction to slow down and yield the right of way, and if he does not do so because of failure to keep a proper lookout or because his speed makes it impossible, a finding of actionable negligence on the part of such driver is permissible." The same would be true as to contributory negligence. The evidence adduced presented a jury question as to both appellant and Wiley and the court was correct in submitting it accordingly.

Appellant contends the jury was misled by certain instructions given by the court. The first relates to the second paragraph of instruction No. 9. This advised the jury that: "Where as a result of such weather conditions (described in the first paragraph) the portion of the highway remaining for travel is not of sufficient width for vehicles to pass, then the vehicle first entering such narrow portion has the right-of-way over vehicles approaching from the other direction, if the vehicle first entering is visible to the driver of the second vehicle approaching such narrow portion before such second vehicle enters such narrow portion, and it would be the duty of such second vehicle to stop before entering and not proceed until the first vehicle had passed through the narrow portion."

The criticism appellant makes of this instruction is that thereby the trial court told the jury the cut was not of sufficient width to permit two vehicles to pass, and, since there was evidence showing the cut was actually wide enough for two vehicles to pass, doing so was misleading and prejudicially erroneous. He cites in support thereof the principle that: "Ordinarily, it is error for the court in its instruction to assume the existence of a material fact as to which there is a conflict in the evidence." Jessup v. Davis, 115 Neb. 1, 211 N. W. 190, 56 A. L. R. 1403.

Ordinarily the first vehicle to enter a one-way passage has the right-of-way and it is the duty of the other

vehicle to stop and accord the right-of-way to it. 3-4 Huddy, Encyclopedia of Automobile Law (9th ed.), § 119, p. 193; 60 C. J. S., Motor Vehicles, § 315, p. 731.

"Instructions to a jury should be considered as a whole and if they fairly submit the case that is all the law requires." Benedict v. Eppley Hotel Co., 161 Neb. 280, 73 N. W. 2d 228.

By the second paragraph of its instruction No. 8 the court informed the jury that: "The laws of Nebraska further provide that drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible."

From the evidence in the record the jury could have found either that the lane would only carry traffic one way or that it was wide enough to permit cars traveling therein to pass each other. Under this situation it was incumbent upon the trial court to inform the jury of the principles applicable in either case. This we think it did by the quoted parts of instructions Nos. 8 and 9. In view thereof we find appellant's contention to be without merit.

Appellant also contends that the court erred by advising the jury in the third paragraph of its instruction No. 10 as follows: "If, however, the plaintiff has proven all of the material allegations of his amended petition, by a preponderance of the evidence, and you further find that the plaintiff was not guilty of negligence which contributed to his injuries, then plaintiff will be entitled to recover such damages as he has shown, by a preponderance of the evidence, to have sustained by reason of the negligence of the defendant."

The criticism made of this language is it had the effect of telling the jury if appellant was guilty of negligence in any degree he could not recover. Standing alone this one paragraph might, by inference, be subject to the foregoing criticism. However, in the very next paragraph of the same instruction the court

advised the jury that: "If, however, you find, from a preponderance of the evidence that the plaintiff was guilty of negligence which contributed to his *injures,* then plaintiff's right to recover will be governed by Instruction No. *12*." Instruction 12 is a complete and correct instruction relating to the doctrine of contributory negligence.

As we have already said, instructions must be considered as a whole. When these two instructions are considered together they fairly and fully present to the jury the question of Wiley's negligence and the contributory negligence, if any, of appellant insofar as they relate to appellant's right to recover. We find appellant's contention to be without merit.

Finally appellant contends the trial court abused its discretion when it refused to permit the jury to view the place of the accident, as he had requested.

Section 25-1108, R. R. S. 1943, provides it may be done whenever, in the opinion of the court, it is proper for a jury to do so.

We have said the trial court has a right to grant such a request and permit a jury to view the premises, but such right is discretionary and this court will not set aside a verdict because the court refused to grant such a request unless it is apparent there has been an abuse of such discretion by doing so. Peake v. Omaha Cold Storage Co., 158 Neb. 676, 64 N. W. 2d 470; Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350. As stated in Peake v. Omaha Cold Storage Co., *supra:* "The refusal of the trial court to permit the jury to view the premises involved in the litigation is not reversible error in the absence of an abuse of discretion."

As stated in 53 Am. Jur., Trial, § 442, p. 350: "The rule generally recognized and applied is that the granting or denying of an order for a view of the premises, upon application by a party, rests in the sound discretion of the court both in criminal and civil cases, and its action in this regard will rarely be disturbed, especially,

in case of a refusal, where there has been a change in the conditions since the cause of action arose or the crime was committed."

And, as stated in 9 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 5905, p. 394: "It rests largely within the discretion of the trial court whether the jury should be permitted to view the scene of an automobile accident and if conditions there have changed since the accident, it is not an abuse of discretion to refuse such permission."

When ruling on this request, and denying it, the trial court stated: "Well, I don't think it would help, myself, unless we could build a snow bank and make it identical to what it was then." And when ruling on appellant's motion for new trial, which raised this same contention, the trial court said: "* * * the conditions at the time of the trial were entirely different from what they were at the time of the accident. * * * It was a temporary condition caused by the snow piling up just below the brow of that hill. Now that couldn't be shown by view and all the other facts are pretty well established."

We think the trial court was correct in its refusal.

Appellees raise the question of whether or not the appeal is here because of certain procedures that took place in the trial court. By the allegations of its amended petition appellant sought to hold the company liable for the negligence of Wiley on the ground that: "* * * at all times hereinafter mentioned (Wiley) was an employee of the defendant, the American Salt Corporation * * * and was acting within the scope of his employment for the said defendant company and with its consent, knowledge and permission." To these allegations the company filed a general denial.

In response to interrogatories served upon it, the company admitted Wiley was employed by it on December 4, 1953, at about 4:30 p. m. At the beginning of the trial it was stipulated: "* * * that the defendant,

American Salt Corporation, admits that the defendant Robert V. Wiley was employed by it on the 4th day of December 1953, at about 4:30 P. M. * * * that Mr. Wiley was employed by the American Salt Company on the day of the accident at the time of the accident." The only evidence adduced in regard thereto is that of Wiley who testified that on December 4, 1953, he was the district representative for American Salt Corporation; that he had samples in his car; that despite the accident he kept on the job the best he could; that he was a salesman for American Salt Corporation; and that he went back to traveling for the company on December 22, 1953.

The rule in this regard is stated in Bartek v. Glasers Provisions Co., Inc., 160 Neb. 794, 71 N. W. 2d 466, as follows: "A person is liable for the negligent operation of an automobile by his servant or agent only where such servant or agent, at the time of the accident, was engaged in his employer's or principal's business with his knowledge and direction."

At the conclusion of all the evidence the company moved for a directed verdict on the grounds that the evidence against it was insufficient to sustain a verdict for plaintiff (appellant) and against the defendant (the company). This motion should have been sustained because there was no proof to support a finding that Wiley, at the time of the accident, was engaged in his employer's business with its knowledge and direction. Thereafter, after the jury had returned its verdict, appellant filed one motion for new trial asking for a new trial against both appellees, which was overruled. In this situation the following applies: " ' "Where a verdict is returned against a plaintiff and in favor of several defendants, on different, distinct and separate defenses pleaded separately by them, a single joint motion for a new trial against them all is insufficient, and it should be overruled if the verdict is good as to any one of the defendants." ' * * * If error assigned in such motion for

new trial is not good as to all it is not good as to any." Gunn v. Coca-Cola Bottling Co., 154 Neb. 150, 47 N. W. 2d 397.

Having come to the conclusion that all of appellant's contentions are without merit we affirm the judgment of the trial court.

AFFIRMED.