ELMER E. RICHARDS, Administrator,

*vs.*

MAINE BENEFIT ASSOCIATION.

Androscoggin.     Opinion November 7, 1892.

*Life Insurance.     Forfeiture.     Restoration.     Fraud.*

A member of the Maine Benefit Association, by intentional non-payment of overdue assessments, forfeited his membership, all interest therein and benefits to be derived therefrom. In his application for re-instatement by payment of such assessments, in consideration that the association would accept them, he stated he was then in good health, and that there was nothing in his habits or condition, which was likely to impair his health or shorten his life; and that if "this statement be found to be in any respect untrue, the policy shall be treated in the same manner as if the assessment had not been accepted;" *Held*, that the stipulation was unqualified; and that an instruction that if the statement, though untrue in fact, were honestly made, the member's personal representative might recover, is erroneous.

ON MOTION AND EXCEPTIONS.

This was action of debt on a policy, or certificate, issued by the defendant on the life of one Albert B. Elwell after whose death by suicide, the defendant contended, *first*, that the certificate was void by the assured's misstatement in his application that he was a widower when in fact he was unmarried but had been divorced; *second*, that he had forfeited his membership by intentional non-payment of overdue assessments; and *third*, by procuring a re-instatement by fraud.

The case appears in the opinion.

*J. C. Holman and I. E. Pearl*, for plaintiff.

Applicant's answers not warranties. "Untrue" limited in its

meaning by words, "to best of my knowledge and belief." *Clapp* v. *Mass. Ben. Ass.* 146 Mass. 519 ; *Flynn* v. *Same*, 152 *Id.* 288 ; *Ala. L. Ins. Co.* v. *Johnston*, 80 Ala. 467 ; *Fitch* v. *Ins. Co.* 59 N. Y. 557. Materiality, a question of fact. *Sharp* v. *Ponce*, 74 Maine, 470, and question for the jury. *Campbell* v. *Ins. Co.* 98 Mass. 395. Right of restoration according to by-laws which are part of contract. *Dennis* v. *Mass. Ben. Asso.* 120 N. Y. 496 ; *Van Houten* v. *Pine* 11 N. J. Eq. 72. False representations : *Brown* v. *Brown*, 72 Maine, 415.

*George C. Wing, White and Carter*, for defendant.

Applicant's answer, " widower," a material representation. *Mut. Aid Soc.* v. *White* 100 Pa. St. 12 ; *Jeffries* v. *L. Ins. Co.* 22 Wall. 47 ; *Jeffries* v. *Ins. Co.* 1 Fed. Rep. 450 ; Bacon, Ben. Soc. § 226. Not a question of fact to be submitted to the jury but with proper instructions. *Campbell* v. *N. E. Mut. Co.* 98 Mass. 401 ; *Anderson* v. *Fitzgerald*, 4 H. L. C. 484 ; Cook, L. Ins. § 17 and notes.

Re-instatement : *Burden* v. *Mass. Ben. Asso.* 147 Mass. 360 ; *Bosworth* v. *Western Soc.* 75 Iowa, 582 ; *Crossman* v. *Mass. Ben. Asso.* 143 Mass. 435 ; *Lyon* v. *Royal Soc.* 153 Mass. 83 ; *Swett* v. *Citizens Mut. Relief*, 78 Maine, 541 ; *Metrop. L. Ins. Co.* v. *McTague*, 49 N. J. 587 ; S. C. 60 Am. Rep. 661.

VIRGIN, J.   Assuming without deciding that, to the question in the application,— "are you married, single, widower or widow ?" the applicant's answer, " widower " to have been substantially true, although the bonds of matrimony between him and his wife had been severed by a divorce *a vinculo* and not by death, and that, therefore, he was, on the date of his certificate, a legal member of the defendant association, we turn attention to the questions — whether he forfeited his membership and the benefits derivable from it, and was subsequently restored and re-instated.

The application and certificate constituted a completed contract of life insurance. *Bolton* v. *Bolton*, 73 Maine, 299. The contract did not absolutely entitle him to the benefits therein mentioned ; for it was expressly "issued by the [defendant] and

accepted by the assured on the condition" therein contained as follows : "Failure . . to pay any assessment made, . . within thirty days, or after notice, given in accordance with the by-laws of said association, shall render this policy null and void, and the holder forfeits to the association all his interest herein and to any benefits to be derived from this association."

Neither Elwell's failure to pay certain assessments within the time limited therefor, nor his receipt of the proper notices thereof is disputed. While the non-payment on or before April 2, did not simply operate a mere suspension or temporary cessation of his interest, but *per se*, without any affirmative act or proclamation by the defendant, worked an absolute forfeiture of "any benefit to be derived from the association," nevertheless, the second and third notices contained an announcement in terms that the time having expired for the payment of the overdue assessments named, "his [your] policy No. 6583 is not in force."

The language of the condition is peremptory and unqualified. It contained no such clause as is found in some certificates, as that a "failure to pay shall be taken as sufficient evidence of an intention to terminate his connection with the association," "or for valid reasons to the officers of the association [such as a failure to receive notice of an assessment] he may be re-instated," as in *Dennis* v. *Mass. Ben. Asso.* 120 N. Y. 494. In such a case, intention on the part of the insured seems to have been deemed one of the essential elements of forfeiture. But even if the certificate, in the case at bar, had contained that clause and Elwell's intention to terminate his connection with the defendant association had been considered essential, then the proof of such intention is not wanting, for in his letter, of May 5, 1890, after acknowledging his failure to pay, he adds : "Why I have let it go by is because I thought I should go into another company." We are of opinion, therefore, that all his right to any benefits under his policy had become forfeited. *Dennis* v. *Mass. Ben. Asso.* 120 N. Y. *supra* ; *Crossman* v. *Same*, 143 Mass. 435.

Was he subsequently restored or re-instated in accordance with

the by-laws of the association, §. 4, of which provides : "Any
member having forfeited his membership may be restored, within
one year, on furnishing a satisfactory certificate of good health
and paying all intervening dues and assessments?"

As seen by his letter of May 15, having changed his mind in
relation to "going into another company," he applied for re-in-
statement to membership.    Accordingly, on May 17, (within
the one year) he received a notice stating — "upon payment of
assessments 18, 19 and 20, on your policy and the furnishing of
enclosed certificate of good health, we shall be able to re-instate
the same,"— meaning to re-instate his membership by reviving
his policy, — adding, "the medical examiner of the company in
Farmington [where Elwell resided] is Dr. Hitchcock."

As seen, the by-law made a "satisfactory certificate" essential,
that is, satisfactory to the officers of the defendant.    The
"enclosed certificate of good health" mentioned in the foregoing
notice of May 17, was a blank form for the "examining physi-
cian's certificate," at the upper margin of which was the notice —
"only certificates of regular appointed physicians, or when none
are appointed, such as hold the degree of M. D., are acceptable."
On the lower margin of this blank was the notice —"this exami-
nation, in addition to personal health certificate on opposite side
of this sheet, is necessary for re-instatement after sixty days from
date of notice of any assessment, "— which included Elwell's
case.

On the opposite side of the sheet containing the "examining
physician's certificate" blank was the "personal health certifi-
cate" blank.    This stated, *inter alia*, "in consideration that the
company shall accept the over due assessments specified . . .
"I hereby state that I am in good health and that there is noth-
in my habits or condition which is likely to impair my health or
shorten my life.    And if this statement is found to be in any
respect untrue, the said policy shall be treated in the same man-
ner as if said premium had not been accepted."    The terms "said
premium" meaning the overdue assessments.

The examining physician's blank was filled out and signed by
a physician (Richards) other than the company's medical exam-

iner (Hitchcock) named therein; and the personal health certificate was signed by Elwell, and both sent to the company inclosed in a letter from Elwell, dated May 24, saying — "I had to get Mr. Richards to examine me, for I went to Hitchcock and he was away, so I send this, and if it is all right please send me the amount due and I will send it Monday."

On the same day (May 24) the company acknowledged the receipt of the certificates, declaring them to be satisfactory, adding — "on receipt of the three assessments due, viz., $12.12, we shall be able to re-instate [revive] the policy." On June 7, following, the money was paid, and subsequently — June 10 — another assessment (No. 21) dated June 1, was paid by Elwell.

Thus,. so far as the face of the papers discloses, Elwell, by intentional failure to seasonably pay his assessments, had, by force of the unqualified stipulations in his certificate of membership, "forfeited all interest to any benefits to be derived from the association;" but by a formal compliance with the by-law, he had apparently become restored to membership and his rights to benefits revived.

This result, however, was only apparent, for it was brought about by his own gross fraud. Instead of submitting to an examination by, and procuring a certificate of good health from, the defendant's known examiner resident in the same town with himself, the certificate of another physician was palmed off upon, and accepted by the defendant, because, it relied upon Elwell's assurance contained in his letter of May 4, inclosing it, that he "had to get it from Richards because he went to Hitchcock and he was away." This statement was false, if any credit is to be given to Hitchcock who testifies that Elwell came to him with a blank certificate, saying he wished to be re-instated as a member of the company, asking for an examination, which the doctor declined to make and kept the blank. And the reason assigned for declining was that, in the preceding February, he was called to visit Elwell professionally and found him suffering from an attempt to commit suicide by taking laudanum, the dregs of which were in a bottle at his side; that Elwell had apparently taken an overdose which his stomach had expelled, but that he

gave the doctor to understand that he was discouraged and had taken the laudanum for the purpose of taking his life. A careful reading of the evidence affords us no reason to question the truthfulness of the latter statement, although the woman present failed, in the excitement incident to the occasion, to recollect — even if she heard Elwell's statement.

Moreover, Elwell's own statement in his personal certificate, of May 23, that — "I am now in good health and that there is nothing in my habits or condition which is likely to impair my health or shorten my life," was also false, especially if he had attempted to take his life as before stated, of which no reasonable doubt is entertainable. For that a suicidal tendency possessed him seems morally certain by the fact that, on the very day on which he paid the last assessment, viz., June 10, following his formal re-instatement, he disappeared and two days afterward, in the pasture back of, and a few rods from the house in which he had been boarding, he was found dead with a bullet hole through his head and the rifle lying across his ankles.

Does the fact that the statement, concerning his health in Elwell's personal certificate, was untrue constitute a complete defense to this action?

The plaintiff contends that it would not if Elwell honestly made it believing it to be true when made; and the presiding justice substantially so instructed the jury.

Such has been held to be the rule of law applicable to statements contained in original applications for membership wherein the applicant "warranted them to be true to the best of his knowledge and belief." *Clapp* v. *Mass. Ben. Asso.* 146 Mass. 519, and cases there cited.

*Motion and exceptions sustained.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.