ELLEN McLAUGHLIN, administratrix, *vs.* SUPREME COUNCIL CATHOLIC KNIGHTS OF AMERICA.

Worcester. September 30, 1903. — October 21, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Fraternal Beneficiary Association. Contract,* Implied.

The rules of a beneficiary association required a member applying for reinstatement, after a suspension of more than thirty and less than ninety days, to pay all arrearages and a reinstatement fee, and to "furnish the branch, the medical examiner's certificate as prescribed for persons on original application." The

rules for original application required the medical examiner's certificate to be made upon a certain form and to be transmitted sealed to the supreme medical examiner whose approval was required.  A member thus suspended paid all arrears and the reinstatement fee, and was examined by a local medical examiner, who made a certificate upon the prescribed form, but, instead of sealing it and transmitting it to the supreme medical examiner, gave it to the member, who delivered it to the branch.  The certificate was not received by the supreme medical examiner until after the death of the member, and was never approved by that examiner.  *Held,* that the medical examiner's certificate to be furnished the branch as a condition of reinstatement was a certificate approved by the supreme medical examiner; therefore, that the member at the time of his death was not in good standing, and his administrator could not recover on a certificate which made the association liable only upon proof of the member's death in good standing in the order.  *Held, also,* that the association was not estopped by delay in forwarding the certificate from setting up this defence, as the possibility of the delay came from the intestate's own act in receiving the certificate and giving it to the local branch.

Upon the death of a member of a fraternal benefit association, who was suspended for failure to pay dues and assessments and was not reinstated at the time of his death, his administrator cannot recover from the association the sums paid as assessments by the intestate before his suspension.

BARKER, J.  This is an action at law, in contract, against a fraternal beneficiary order to recover upon a benefit certificate. There is also a count for money received, and the plaintiff contends that if not entitled to maintain her action on the benefit certificate, she can recover the amount paid into the treasury of the order by the deceased member, who was her husband, and of whose estate she is the administratrix.

He became a member of the order in February, 1896, when the benefit certificate was issued.  By it the defendant agreed to pay, upon due proof of the member's death, " he being in good standing in the order," the sum of $1,000, and the intestate agreed to pay " all assessments, dues and fines assessed against him, according to the laws, rules and regulations of the . . . Supreme Council, which may now or hereafter govern the order."  After numerous small payments, he was, on November 2, 1900, suspended from membership for failure to pay dues and assessments.  On January 14, 1901, he applied for reinstatement.  This application was more than thirty and less than ninety days after his suspension.  The rules require that a suspended member applying for reinstatement shall pay up all arrearages and a reinstatement fee, and, if he has been suspended for less than thirty days, shall also " furnish the branch an

affidavit that he is in sound health and has had no ailment during his suspension," and if he has been suspended more than thirty and less than ninety days, shall "furnish the branch, the medical examiner's certificate as prescribed for persons on original application."

The rules require the medical examiner's certificate, in case of an original applicant, to be made upon a certain form, and to be transmitted by the local examiner, sealed up, to the supreme medical examiner, who in turn, if he approves the certificate and recommends the applicant as a fair risk, shall transmit the certificate, with his approval indorsed thereon, to the supreme secretary. The supreme medical examiner has power by the rules to approve or reject all such certificates, and from his decision there is no appeal.

On making his application for reinstatement on January 14, 1901, the intestate paid to the local lodge all arrears of dues and assessments and the reinstatement fee, his whole payment upon that day amounting to $8. On February 6, 1901, he was personally examined by a local medical examiner of the order, who made a certificate of the examination upon the prescribed form, but did not seal it up nor transmit it to the supreme medical examiner, but gave it to the intestate who, on or about the same day, delivered it to the branch.

The intestate died on February 20, 1901. The medical examiner's certificate which he had delivered to the local branch on February 6, 1901, was received from that branch by the supreme medical examiner on April 23, 1901, was not approved by him, and on the next day was returned by him for correction to the secretary of the branch, the supreme examiner not knowing the address of the local examiner who had made it. It never was returned to the supreme examiner, never approved by him, and never transmitted to the supreme secretary.

It appears from the answers of the supreme secretary to interrogatories filed by the plaintiff, that he did not issue new certificates to reinstated members, but that the reinstatement revived the old certificate, and he further stated that the plaintiff's intestate was not reinstated because he had not furnished the medical examiner's certificate required in the rule.

The plaintiff asked the judge to direct a verdict in her favor

for the sum of $1,000, the amount mentioned in the benefit certificate, and also contended that if not entitled to that verdict the jury should be instructed to return one in her favor for the sum of $127.72, the amount of all the payments made to the order by her intestate as set forth in her count for money had and received. The defendant asked the judge to direct a verdict for the plaintiff for the sum of $8, the amount paid on the intestate's application for reinstatement, on the ground that the plaintiff had not proved that her intestate was a member of the order at the time of his death, and that therefore the plaintiff could not recover in excess of the amount paid by the intestate to the local branch for reinstatement. The judge ordered a verdict for the plaintiff for $8, and the case is here upon her exceptions.

The promise to pay the $1,000 was conditioned upon the member's being in good standing at the time of his death. *Lyon* v. *Royal Society of Good Fellows*, 153 Mass. 83. He died on February 20, 1901, having been suspended from the order on November 2, 1900. His application for reinstatement and his payment of arrearages and a reinstatement fee on January 14, 1901, did not of themselves work a reinstatement, because he did not then furnish any medical examiner's certificate. As a full compliance with the rules governing reinstatements would of itself work his reinstatement without the issuing of a new certificate, the decisive question is whether his giving to the local branch on February 6, 1901, the local medical examiner's certificate was, with his previous application and payments, a complete compliance with the rule. No assessment is shown to have been made upon him and no payment to have been made by him after January 14, 1901, from which to infer estoppel or waiver. See *Campbell* v. *Knights of Pythias*, 168 Mass. 397. All that was done by him, by the local branch, or by any officer or member of the order, after that date and before his death, was for him to submit, on February 6, to a personal examination by the local medical examiner, for that officer to make out a report of the examination on the proper form, and for the intestate to deliver that report to the local branch.

If a fair construction of the rules required that the local medical examiner's report before becoming an effectual compliance

with the rule so as to work a reinstatement should be approved by the supreme medical examiner, that approval was not secured before the intestate's death, and in fact never was secured. In the language of the rule the medical examiner's certificate which the intestate as an applicant for reinstatement was to "furnish the branch" was a "medical examiner's certificate as prescribed for persons on original application." This was to be made in the first instance by the local examiner and to be by him sealed up and transmitted to the supreme medical examiner, then, if approved by him, indorsed with such approval and transmitted to the supreme secretary. It is clear that no such certificate could under the rules be sufficient to entitle an original applicant to insurance until approved by the supreme medical examiner. We think that the rule as to reinstatement puts an applicant for reinstatement who has been suspended for more than thirty days upon the same footing as an applicant for original insurance, so far as the medical examiner's certificate is concerned. It is no answer to this construction that it required of the intestate something which he could not furnish without the action of other persons. It was for him to effect his own reinstatement, and if he did not cause to be done the necessary acts his reinstatement would not be accomplished, and the defence that he was not in good standing in the order at the time of his death would be open unless the doing of the necessary acts was prevented by some fault of the defendant. See *Audette* v. *L'Union St. Joseph,* 178 Mass. 113.

The chief purposes of the rule as to reinstatement were first, to insure the payment of all money which the applicant would have paid if he had kept his standing good, and secondly, that the forfeiture of rights under the benefit certificate should not be taken off unless the applicant was in good health at the time of his reinstatement, and had suffered no illness during his suspension. Both of these objects it was as important to secure in the case of men who had been under suspension for more than thirty days, as in the case of those who had been suspended more recently. Even in the case of those who had been suspended for less than thirty days, the applicant must furnish proof by affidavit that he is in sound health at the time of applying for reinstatement and has had no ailment during his suspension.

If a suspended member is taken ill within thirty days after suspension and before applying for reinstatement, he cannot successfully apply for reinstatement within that time, because he cannot make the required affidavit. It would be absurd that he could apply after the expiration of the thirty days, and by submitting to an examination which might show that he was then dying of a fatal illness, and, by merely delivering to the branch the local examiner's report of that examination, effectually work his own restoration to good standing in the order. We therefore think that "the medical examiner's certificate as prescribed for persons on original application" which he must "furnish the branch" is a certificate approved by the supreme medical examiner.

Nor should the defendant be estopped by the delay which in the present instance occurred in the forwarding of the certificate to the supreme examiner. The possibility of the delay came from the intestate's own act. Certificates on original examination are to be sent to the supreme examiner by the local examiner. The intestate himself, instead of seeing that this course was pursued, took the certificate from the local examiner and gave it to the local branch. He should have declined to receive the certificate and have caused or allowed it to take the usual course of a certificate made on an original examination. There is no ground for finding bad faith on the part of the local examiner, the branch, or the defendant itself or its supreme officers. It was a misfortune that the intestate mistook the true construction of the rule, and so interfered with the regular course in receiving the certificate from the local examiner and giving it to the branch, thereby making possible the delay of the branch in consequence of which the certificate was not acted upon by the supreme examiner until after the intestate's death.

Nor could the plaintiff recover the sums paid by her intestate before his suspension. Those payments were in accordance with the contract between him and the order, and in consideration of his membership and of the insurance which had been in force upon his life until his suspension. So far as the benefit of the payments has been lost, that result is due to the intestate's failure to comply with the obligations imposed upon him by his agreements in the original contract, and not from any fault of

the defendant or its agents. The forfeiture arose from his own omission to make payments in compliance with his contract. See *Keefe* v. *Fairfield, post,* 334.

Whether the plaintiff could recover the $8 paid when her intestate applied for reinstatement is a question not raised by her exceptions.

*Exceptions overruled.*

*F. N. Thayer,* for the plaintiff.

*J. H. Meagher, E. Zaeder & J. P. Morrissey,* for the defendant.