(85 South. 57)

No. 22813.

## BARGANIER v. KNIGHTS OF THE MACCABEES OF THE WORLD.

(May 31, 1920.)

*(Syllabus by Editorial Staff.)*

Insurance ⬤⇒755(5)—Acceptance of dues by officer of subordinate lodge subsequent to member's default held not to estop principal lodge from asserting that member was suspended at time of death.

Where constitution of fraternal organization provided that member should be suspended without notice on failure to pay dues during the month for which they are due, that officer of subordinate lodge was not authorized to accept dues from suspended member, who had not complied with requirements for reinstatement, and that the subordinate lodge and its officers should be agents of the members, and not the principal lodge, the acceptance by officer of subordinate lodge of dues from member who had defaulted, and who had not been reinstated, did not estop the principal lodge from asserting that member was suspended at time of his death, in view of Act No. 256 of 1912, § 20.

Appeal from Second Judicial District Court, Parish of Webster; John N. Sandlin, Judge.

Action by Mrs. Maude Mabel Barganier against the Knights of the Maccabees of the World. Judgment for defendant, and plaintiff appeals. Affirmed.

L. K. Watkins, of Minden, for appellant.

A. J. Calhoun, of Memphis, Tenn., and Drew & Drew, of Minden (D. D. Aitken, of Flint, Mich., of counsel), for appellee.

DAWKINS, J. Plaintiff appeals from a judgment rejecting her demands upon an alleged life benefit certificate in the defendant association.

During the month of March, 1912, Ernest Augustus Barganier, the husband of plaintiff, joined the local tent, No. 108, at Minden, La., of the Knights of the Maccabees of the World and stood the physical examination for a life benefit certificate in the sum of $3,-000, which was in due season issued to him. He paid his dues thereon, amounting to $2.-25 per month, plus such local assessments as were required from time to time, up to and including August, 1914. The rules of the Grand Lodge, or the defendant here, permitted the payment of these dues at any time during the month which they were to cover, but on the 1st of the following month, any one failing to pay became delinquent, and, on being advised of such delinquency, the defendant required a certain certificate with reference to good health, before reinstatement. However, it allowed the record keeper of the local lodges or tents until the 20th of the following month in which to remit for dues collected for the month preceding, and this local officer in turn permitted the members to remit to him at any time up to the date, say about the 18th, when it was necessary for him to mail his remittance to the defendant in order to prevent the entire tent from being suspended.

Some time during the year 1914, Barganier and his wife, the present plaintiff, went to El Paso, Tex., for the benefit of the husband's health, and the remittance to W. R. Garrison, local record keeper of Tent 108, for September, 1914, was mailed at El Paso, addressed to Garrison, on October 20, 1914, and reached him at Minden, La., on October 23d. In the meantime, that is, on October 19, 1914, the local record keeper had made his remittance to defendant for September, and had reported Barganier as suspended for failure to pay his dues for that month. Upon receipt of the remittance, Garrison wrote Barganier and inclosed the necessary blanks for filling out in order to be reinstated, but this was never done, and the insured thereafter made remittances for three subsequent months, for which receipts were issued by Garrison, but none for September. Under the rules, Barganier had 90 days within

which to be reinstated, and at the end of this time Garrison sent in the remittances for him; but they were by the defendant returned, for the reason that the insured had never furnished the certificate of good health, etc., required for reinstatement. Thereupon Garrison sent Barganier St. Louis exchange for the entire amount which had been received, including that for September, and that draft was received and accepted by the insured. This draft was dated March 3, 1915.

Some further correspondence took place between Barganier and the defendant association thereafter, but the matter seems to have been finally dropped. The reason that the insured could not furnish the required health certificate was that he had contracted tuberculosis, of which he died in Malina, Fla., on October 3, 1916, about 2 years after having been suspended.

Plaintiff bases her right to recover largely upon the ground of estoppel; that is, the local record keeper having received the dues for subsequent months, after the alleged suspension, and issued receipts therefor, it is claimed that the defendant cannot now be heard to say that the remittance for September, 1914, was not timely made. However, at the time Barganier became delinquent, the Act No. 256 of 1912, had been passed, making the constitution, laws, and charter, the application for membership, medical examination, etc., together with the benefit certificate, in such associations as the defendant, "the agreement between the society and the member," and giving subsequent amendments thereto the same effect as if they had been adopted prior to the issuance of the certificate. Section 20 of said act also provides:

"That the constitution ·and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

The constitution of the defendant association contains the following provisions, to wit:

"Sec. 159. The tent and its officers, in performing the duties and administering the powers provided by the laws of the association, shall be the agent or agents of the members thereof, and not of the association, and no act or failure to act· by the tent, or by an officer or member thereof, shall create or be construed to create any liability on the part of the association.

"Sec. 160. The association shall not be liable for the illegal receipt of arrears in monthly rates, additional assessments, per capita taxes, fines or dues from suspended members or from members prescribed by the laws of the association. The receiving of any such arrears and receipting therefor by any officer or officers of a subordinate tent or of the association and the reinstatement of any member, except as provided in these laws, shall not be binding on the association."

"Sec. 234. The record keeper of a subordinate tent is an officer elected by the members thereof, over whose selection the association has no control, and is hereby declared to be the agent of the tent and its members, and not the agent of the association; and no act or failure to act on his part shall have the effect of creating any liability on the part of the association, or of waiving any right belonging to it."

"Sec. 239. The record keeper of a subordinate tent shall not receive any monthly rate, additional assessment, dues or fine from any life benefit member who has been suspended for the nonpayment thereof, unless such member shall furnish the required medical examination and comply with all other requirements provided in these laws for the reinstatement of suspended members."

The provisions for the payment of assessments or dues upon life benefit certificates are as follows:

"Sec. 322. *When Due and Payable.*—These monthly rates will be due without notice, on the first day of each month, and must be paid by the member to the tent record keeper on or before the last day of the month. * * *"

"Sec. 197. *Monthly Report and Remittance.* —A tent shall become suspended for failure to forward to the Supreme Record Keeper each month the monthly report and remittance for

the preceding month, so that it shall be received by the Supreme Record Keeper within twenty days from the last day of such preceding month."

"Sec. 330. *Suspension from Association and Tent.*—A life benefit member failing to pay a monthly rate, per capita tax or additional assessment within the month on the first day of which it is due, shall stand suspended without notice, from all the rights of life benefit membership and from all the privileges and benefits of his tent."

It is useless to cite authorities to support a proposition so plainly covered by the statute and the rules of the association, which have the effect of laws thereunder. It is not pretended that any general officer or agent of the defendant association received or accepted any payment after Barganier was suspended some two years prior to his death, and hence the plaintiff cannot recover.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.