FLORENCE L. VAN DAHL, APPELLEE, V. SOVEREIGN CAMP,
WOODMEN OF THE WORLD, APPELLANT.

FILED JANUARY 10, 1936.   No. 29502.

*Rainey T. Wells, J. M. Sturdevant, George Yeager* and *John F. Futcher,* for appellant.

*Frank H. Woodland* and *Charles H. Marley, contra.*

Heard before GOSS, C. J., ROSE and CARTER, JJ., and REDICK and KROGER, District Judges.

CARTER, J.

This is an action to recover a death benefit under a beneficiary certificate issued to Henry E. Van Dahl by the Sovereign Camp of the Woodmen of the World. The jury returned a verdict for the appellee, the wife of the deceased and the beneficiary under the certificate, for $1,664.09, upon which judgment was entered. From the overruling of its motion for a new trial, appellant brings the case to this court on appeal.

The evidence shows that, at the time of the death of Henry E. Van Dahl, he was possessed of a beneficiary certificate in the amount of $1,585 issued to him by the appellant association. The certificate provided that the articles of incorporation, constitution, laws and by-laws of the association, and all amendments thereto, the application for membership and the certificate constituted the contract between the association and the insured. Under the terms of the certificate, Henry E. Van Dahl was required to pay a monthly instalment of assessment thereon in the sum of $3.34 on or before the last day of the calendar month in which it became due, all instalments becoming due on the first day of the month. The contract also provided that, if any monthly instalment was not paid on or before the last day of the month in which it became due, the said Van Dahl should become suspended and his certificate should be null and void. The contract further provided that a member who had become suspended might again become a member if, within three months from the date of his suspension and while he was in good health, he paid his delinquent instalments, but further provided that such a payment of delinquent instalments should be a warranty that said suspended person was in good health at the time

of the payment thereof and would remain in good health for 30 days thereafter. The contract further provided that the receiving and retaining of the delinquent instalments by the association should not operate as a waiver or estoppel to show that the insured was not in good health when he attempted to reinstate as a member. It was also provided by the contract that any attempt by a suspended member to become reinstated by the payment of delinquent instalments should not be effective for that purpose unless such person continued in good health for 30 days after such attempt, and that the payment of delinquent instalments of assessments should be a warranty that such person was at the time in good health and that, if the warranty was not true, the certificate should be null and void.

The record is undisputed that Henry E. Van Dahl failed to pay the instalment of assessment on the certificate sued upon for the month of December, 1932, on or before the last day of that month and, under the provisions of the contract, he became suspended. On January 16, 1933, Van Dahl attempted to reinstate the certificate by payment of his delinquent instalment for the month of December, 1932, and on January 31, 1933, he paid the instalment for January, 1933. Henry E. Van Dahl died on February 4, 1933, as a result of an operation for a brain tumor. On February 8, 1933, proofs of death were furnished the association by appellee, and appellant denied the claim and tendered back the amount of the December, 1932, and the January, 1933, instalments paid by Henry E. Van Dahl.

It is the contention of appellant that, under this state of facts, Henry E. Van Dahl was suspended on January 1, 1933, and that he was never reinstated thereafter under the terms of the insurance contract.

Where a member of a fraternal benefit association applies for the issuance of a beneficiary certificate for himself, the articles of incorporation, constitution, laws and by-laws of the association, and all amendments thereto, the application for membership and the certificate, when the certificate issued to him so provides, constitute the contract.

*Farmers Mutual Ins. Co. v. Kinney,* 64 Neb. 808, 90 N. W. 926; *Pope v. Royal Highlanders,* 101 Neb. 774, 164 N. W. 1047. This court has also held that the by-laws of a fraternal benefit association, providing for the payment of assessments made during the month on a certain day and for suspension, without notice, of members in default, are self-executing and a reasonable and necessary penalty for the enforcement of payment of assessments to a fraternal insurance fund. *Field v. National Council of K. & L. of S.,* 64 Neb. 226, 89 N. W. 773; *Sawyer v. Sovereign Camp, W. O. W.,* 105 Neb. 395, 181 N. W. 191; *Jensen v. Grand Lodge, A. O. U. W.,* 106 Neb. 66, 182 N. W. 599.

It is not disputed in the record that Van Dahl was suspended on January 1, 1933, for nonpayment of the December, 1932, instalment of assessment. Having been suspended, he could be reinstated only by a strict compliance with the by-laws of the association with reference thereto. In *Edgerly v. Ladies of the Modern Maccabees,* 151 N. W. 692 (185 Mich. 148) the court said: "A member of a fraternal benefit society who has been suspended can be reinstated only in strict conformity with the by-laws in force at the time of reinstatement, and has no rights until an actual reinstatement has taken place." In *Supreme Lodge v. Grijalva,* 28 Ariz. 77, 235 Pac. 397, the court said: "Now, if a member of a beneficiary society has forfeited his right to benefits, the society may impose such reasonable terms on his reinstatement as it sees fit, and unless all the terms are complied with, it is not liable for benefits accruing after the forfeiture. *Brun v. Supreme Council,* 15 Colo. App. 538, 63 Pac. 796; *McLaughlin v. Supreme Council,* 184 Mass. 298, 68 N. E. 344."

In the case at bar, the constitution and by-laws of the association provided that a member suspended for nonpayment of assessments could be reinstated, within three calendar months from the date of his suspension, by the payment of the current instalment of assessment and all instalments of assessments which should have been paid to maintain him as a member. The provision further provided

that when such payments were made, "such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member." Van Dahl was suspended on January 1, 1933, and paid up his delinquent instalment of assessment on January 16, 1933. He died on February 4, 1933, and therefore did not, and could not, comply with the constitution and by-laws of the association with respect to the condition imposed that he be in good health when the delinquent assessments were paid and that he be in good health for 30 days thereafter. The appellant contends that the inability of Van Dahl to comply defeated the certificate and that the trial court, as a matter of law, should have directed a verdict in its favor.

In *Pickens v. Security Benefit Ass'n*, 117 Kan. 475, 231 Pac. 1016, the court said: "By-laws of a fraternal beneficiary society permitted reinstatement of a member after suspension for nonpayment of dues, by payment of arrearages and dues within a grace period, providing the member was in good health, and payment for purpose of reinstatement constituted a warranty of good health. *Held*, good health in fact was required, and the requirement was not satisfied by appearance of good health or reasonable belief that the member was in good health."

In *Supreme Lodge v. Grijalva, supra,* the court said:

"The warranty of good health, and actual good health on the part of the insured, are expressly made conditions precedent to the reinstatement of the already automatically forfeited certificate in this case. A somewhat similar situation arose in *Richards v. Maine Benefit Ass'n,* 85 Me. 99, 26 Atl. 1050. Therein the insured allowed his assessments to go unpaid until his certificate had lapsed, and afterward caused it to be reinstated by paying his back dues, and fraudulently concealing his state of health. It was held that, notwithstanding the acceptance of the back dues, he could not recover. The principle involved herein is discussed in *Cromeens v. W. O. W.*, 208 Mo. App. 11, 233 S. W.

287, and it is held that a false warranty as to health voided the certificate, notwithstanding the acceptance of dues by the local lodge. It is true that case refers to an original application for insurance, but there is no reason why the same rule should not apply to a false warranty on a reinstatement, when it is expressly agreed the warranty is made as a condition for such reinstatment. See, also, *Marshall v. Women's Mutual Ins. & Accident Co.,* * * * 11 N. Y. Supp. 700.

"It seems to us that the position of the defendant herein is but reasonable. It is provided expressly in its original certificate that if a member, through his own negligence, forfeits his insurance, it cannot be reinstated unless he warrants himself to be in good health, and is actually so, at the time of his application for reinstatement. This condition is not unreasonable. Insurance companies are not organized nor are their premiums calculated on the basis of insuring those already sick, but upon the insuring of the well against a future illness or death. The doctrine of waiver is based on knowledge, and unless the statute clearly requires it, we should not hold that acceptance of past-due assessments on an insurance certificate which has automatically lapsed waives, not only what the insurer already knows, to wit, that the payment is overdue, but also through *ex post facto* action (for that is the only way such result can be produced) reinstates the lapsed policy by a compulsory waiver of the very thing expressly stipulated as essential to reinstatement, and which the insured has agreed he warrants by the very offer of his money, and without which warranty it could not, and would not, have been accepted."

In *Sovereign Camp, W. O. W., v. Cox,* 221 Ala. 58, 127 So. 847, the court said: "But there was in evidence another provision of the constitution and by-laws to the effect, in short, that any such suspended member, 'if in good health, may within ninety days from the date of his suspension again become a member' by paying all proper instalments and assessments to date, with the further stipulation that such payment shall warrant that he is then in good health

and that he will remain so for thirty days thereafter, and it shall be a contract that the payment shall not waive any of the provisions of that section until the Sovereign Camp shall receive notice that he 'was not in good health when he attempted to again become a member,' and that the receipt of such payment when he is not in good health shall not make him a member. Another section (66-b) provides that an 'attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continues in good health for thirty days thereafter.' * * * In order for such payment to operate a reinstatement, if that is the proper term under the quoted provisions of the rules, the insured must be in good health when the payment is made. That means received at the proper office. But the only evidence of his condition when the money was *sent* is that he had pneumonia, and that he was dead before it was received. It must be received while he is in good health, and he must remain so for thirty days thereafter in order to be completely and unconditionally restored to membership, according to the constitution and by-laws. The receipt of the money is expressly stated to be on those conditions. * * * That was only one of the conditions, and its compliance was but one step. It is quite well understood that if the company with knowledge of a breach negotiates with assured as though the policy were still in force, and induces the assured to incur trouble or expense, it thereby waives the right to claim the forfeiture. *Sovereign Camp, W. O. W., v. Allen,* 206 Ala. 41, 89 So. 58; *Sovereign Camp, W. O. W., v. Jones, supra.* But, after the occurrence of facts causing the suspension, the company will not be estopped to deny it, nor to waive the unfulfilled conditions of a reinstatement by negotiations which recognize the right to reinstate, and even by accepting one of the conditions without notice that the others cannot or will not be complied with. This principle is also in effect expressly so stated in the provisions of the constitution and by-laws fixing the right to be reinstated."

In *Sovereign Camp, W. O. W., v. Lambert,* 228 Ala. 440, 153 So. 627, the court, in a case very similar in principle to the one at bar and involving identical provisions as to reinstatement for nonpayment of assessments, said:

"The insured member, Talbert N. Lambert, had failed to pay the dues or assessments for the month of April, 1932, during said month, and likewise for the month of May.

"On the evening of June 4th, these delinquent dues, as well as those for the month of June, were paid by the beneficiary to the financial secretary of the local camp.

"On the same evening the insured member was fatally shot in a holdup at his store, and died early next morning. The financial secretary promptly reported the situation to the Sovereign Camp at Omaha, Neb., and was directed to forthwith return the money. The offer to return was refused. * * *

"When for nonpayment of dues as per contract a benefit certificate in a fraternal insurance society is no longer in force, it is for the parties to stipulate whether, in any event, the insurance shall ever again be put in force. If suspended, subject to reinstatement, it is for them to stipulate the terms and conditions on which it shall again become effective. This is sound law everywhere recognized. Contracts stipulating that, upon full compliance with the terms of reinstatement, it shall become effective at the end of a stipulated period thereafter, and conditioned on good health at the end of such period, are upheld as to such condition. * * *

"There is no reason why a warranty may not be given touching future events over which the parties have no control. In other fields of law it is well known that parties may warrant against matters, known or unknown, which may materially concern the parties. * * *

"Surely, if a man is no longer alive, if there be no subject of life insurance, good health as a condition on which the insurance is reinstated cannot exist."

We therefore conclude that, under the terms of the contract, the appellant was not liable for the payment of the

principal sum of the beneficiary certificate involved in this case. The deceased, Van Dahl, when he paid his delinquent instalment of assessment for the purpose of becoming reinstated, warranted, as a condition to his reinstatement, that he was then in good health and that he would remain so for 30 days thereafter. The death of Henry E. Van Dahl within 30 days after the payment of the delinquent instalment of assessment conclusively established the fact that a compliance could not be had with the conditions required as to his good health. The conditions imposed in order to obtain reinstatement not having been met, the certificate is not reinstated and a recovery cannot be had thereunder.

The appellee contends, however, that the delay in the payment of the instalments of assessment was in accordance with the custom and practice of Henry E. Van Dahl, acquiesced in by the appellant, and extending over a period of years; that the appellant waived the requirement of the contract that the monthly assessments be paid during the month for which they were assessed; and that appellant is estopped from claiming any forfeiture growing out of such delay.

This contention is well considered in *Koehler v. Modern Brotherhood of America,* 160 Mich. 180, 125 N. W. 49, as follows: "It is said that the insured had paid 17 assessments, only 5 of which were paid on or before the date specified, and that this was evidence of a practice which misled plaintiff and excused promptness in payment, and that the court erred in refusing to charge the jury that if the insured had been misled by long continued course of conduct, and so believed that a strict performance on his part was not necessary, the defendant could not insist on the forfeiture, and also in instructing the jury that the insured, not having paid his assessments within the time specified, stood suspended, and being suspended at the time of his death, no insurance could be recovered. We are of the opinion that the evidence did not justify the request made, and that the charge given was as favorable instruction as the plaintiff was entitled to. The defendant was not

responsible for these delays. The supreme body was not in a position to know the exact dates of payment, and may never have known that there was a delinquency; but, even if it did and was willing to overlook such delinquencies and receive and treat the payments as seasonably made, this liberality should not be given the effect of waiving in advance subsequent delinquencies, thereby, in effect, abrogating the provisions of the contract and practically making a new one." See, also, *Sovereign Camp, W. O. W., v. Cameron,* 41 S. W. (2d) (Tex. Civ. App.) 283; *Barganier v. Knights of the Maccabees of the World,* 147 La. 409, 85 So. 57; *Supreme Lodge v. Grijalva, supra; Pickens v. Security Benefit Ass'n, supra.*

It having been determined that there is no liability on the part of appellant on the beneficiary certificate sued upon, the trial court erred in not sustaining appellant's motion for a directed verdict. The judgment of the district court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.