WALTER WOLSKI, APPELLANT, V. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY, APPELLEE.

283 N. W. 381

FILED JANUARY 13, 1939. No. 30466.

644

*Friedman & Higgins,* for appellant.

*King & Haggart, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

This is an action brought by the beneficiary on two industrial insurance policies of the face value of $740 and $96, respectively, issued by the defendant company to Paul Wolski October 6, 1930. The premiums were paid on the policies until December 21, 1936, at which time the weekly premiums became delinquent. An agent of the company usually called at the insured's home weekly to collect the premiums, but did not call after said date. February 23, 1937, the insured paid premiums in arrears and signed applications to revive the policies. Other evidence will be discussed in the opinion. At the conclusion of all the testimony, on motion made by defendant, the trial judge directed a verdict for the defendant, and from this ruling the plaintiff appeals.

Plaintiff contends that the incontestable clause in the policies applies as well on a reinstatement as on the original issuance of the policies, and that the policies are incontestable except for fraud, or nonpayment of premiums. We have under consideration applications for revival of the two policies, and with reference to the incontestable clauses appearing in the policies, and the effect of such clauses in favor of the insured and the rights of the insurer thereunder, the following pertinent authorities are applicable:

In the case of *Lanier v. New York Life Ins. Co.*, 88 Fed. (2d) 196, it was held:

"Reinstatement of life policy, under agreement to present satisfactory evidence of insurability at home office and to pay overdue premiums with interest, was not automatic but required meeting of the minds, and to that extent had elements of a new contract, but old contract went back into force with premium rates and dates and general provisions unchanged, and, pursuant to promise in policy, default was wiped out as though it had not occurred. * * *

"Where life policy contains clause that policy shall be incontestable after two years from its date of issue except for nonpayment of premium, parties intend that there shall be a similar period to contest reinstatement, beginning.

when reinstatement occurs instead of at date of issue of policy." See *State Life Ins. Co. v. Spencer*, 62 Fed. (2d) 640; *Pacific Mutual Life Ins. Co. v. Galbraith*, 115 Tenn. 471, 91 S. W. 204; *Teeter v. United Life Ins. Ass'n*, 159 N. Y. 411, 54 N. E. 72.

When the insured signed the applications for revival of the two policies, the old contracts were void, and if revived, as provided for by complying with the conditions for reinstatement, the heretofore existing insurance contracts, with all of their provisions, would again come into being.

Plaintiff further contends that the courts of Nebraska, by statute and precedent, are committed to the view that the language in the applications, in the medical examinations and in the policies upon which the defendant relies amount to no more than representations and do not constitute warranties, citing *Pollard v. Royal Highlanders*, 128 Neb. 790, 260 N. W. 399. The defense in that case was based upon statements made in the application for reinstatement upon which the company relied, and was not predicated upon a condition precedent. The policies in the instant case, among other things, provide that "there shall be no liability whatever under this contract for any disability or death resulting from an accident occurring or illness contracted or commencing prior to the date of the revival indorsement hereon as aforesaid."

It will be noted that the policies specifically provide that there shall be no liability if the applicant is not then in good health, and no medical examination by or certificate from a physician is required. The premiums on the two policies lapsed December 21, 1936, for a period of nine weeks. On February 23, 1937, the insured, calling at the office of the defendant, signed two applications for revival of the two policies. Each application contained the following provision:

"I hereby declare that I am the person who was formerly insured under the above named policy, and that having allowed it to become lapsed, I wish to revive it. I certify

that I am now in good health, that I am suffering from no disease, either acute or chronic, nor from the result of any accident or injury. * * * I ask a revival of my policy with the understanding that it will not be in force (although I now pay arrears) until the company shall have approved this application and evidenced same by indorsement on my policy, and that my policy, if revived, will only be in such benefit as provided by the rules of the company."

The reinstatements of the policies were indorsed thereon March 8, 1937. At the time that the applications for revival were entered into and the indorsements made on the policies, the insured was suffering from a serious disease, a cancer. The testimony of the operating surgeon is positive and absolute that the condition had existed for 8 months prior to the operation, or more, probably from 12 to 14 months. Therefore, the insured was not in sound health at the time he signed the applications for revival of the policies. The condition required by the company in reviving policies, requiring good health on the part of the insured, is, in no sense, unreasonable.

In the case of *Weddle v. Prudential Ins. Co.*, 130 Neb. 744, 266 N. W. 624, this court held: "A provision that a policy shall not take effect unless the insured is in good health upon the date of issuance is a condition precedent without which there is no liability under the policy." In the above case an action was brought on an industrial policy. In the body of the opinion we find this language (p. 749) : "Where a policy of life insurance provides that it shall not take effect if on the date thereof the insured be not in sound health, but the premiums shall be returned, the insurer, to defend under this provision, must allege and prove a return or a tender of the premiums,"—citing *Metropolitan Life Ins. Co. v. Moore,* 117 Ky. 651, 79 S. W. 219. In the instant case, the defendant tendered the paid-up insurance, as evidenced by the policies, at the time they lapsed, plus all premiums paid for reinstatement and subsequent thereto.

In the case of *Van Dahl v. Sovereign Camp, W. O. W.,*

130 Neb. 181, 264 N. W. 454, an action was brought against a fraternal benefit association, where the constitution and by-laws of the association provided that a member, suspended for nonpayment of assessments, may, within three months from the date of his suspension, again become a member by paying all delinquent premiums to date, and that such payments will be held as a warranty that he was in good health and would remain so for 30 days thereafter; that there is no liability on the part of the association where it appears from the evidence that the holder of the certificate died within 30 days from the payment of the delinquent assessments. In the body of the opinion *Pickens v. Security Benefit Ass'n,* 117 Kan. 475, 231 Pac. 1016, was cited, in which case, in discussing by-laws of a fraternal beneficiary society, permitting reinstatement, providing the member was in good health, constituted a warranty of good health, it was *"held,* good health in fact was required, and the requirement was not satisfied by appearance of good health or reasonable belief that the member was in good health." *Pickens v. Security Benefit Ass'n, supra,* first paragraph of syllabus.

In the case of *Supreme Lodge v. Grijalva,* 28 Ariz. 77, 235 Pac. 397, also cited and quoted from in the *Van Dahl* case, it was said (p. 84) : "The warranty of good health, and actual good health on the part of the insured, are expressly made conditions precedent to the reinstatement of the already automatically forfeited certificate in this case." See *Richards v. Maine Benefit Ass'n,* 85 Me. 99, 26 Atl. 1050.

We have further expression by this court, where an industrial policy was involved, as in the instant case, in *Hinnenkamp v. Metropolitan Life Ins. Co.,* 134 Neb. 846, 279 N. W. 784, wherein this court quoted from the case of *Weddle v. Prudential Ins. Co., supra,* holding: "A provision that a policy shall not take effect unless the insured is in good health upon the date of issuance is a condition precedent without which there is no liability under the policy."

This court recognizes and enforces a condition precedent, which is separate and distinct from the general rule with respect to representations of fact, where the defense is based upon fraud. In the *Hinnenkamp* case, none of the medical men testified that the insured had a cancer in September or October, 1935, or expressed their opinion to that effect. The company's physician gave the insured a superficial examination at the time that he applied for the policy. This physician was called as a witness for the defense and testified that, in his opinion, the insured was of unsound health at the date of the application and delivery of the policy. He had passed the insured by his examination of him. This presented a controverted issue of fact on the question of sound health, and this controverted question of fact developed on the testimony of the defendant company's own witnesses. In the instant case the evidence of Doctor Best is not controverted. After an extensive operation he removed the cancer and stated he would say that the cancer was at least 8 months old, and probably closer to 12 or 14 months. There is no controverted question. The insured was not in sound health at the time he signed the applications for revival of the policies. He did not meet the condition precedent. The *Hinnenkamp* case is distinguished from the case at bar.

Plaintiff contends that the indorsement of March 8, 1937, on the policies, in conformity with the revival applications, and the acceptance of subsequent premiums reinstated the policies and raised a presumption that the insured was in sound health and that the policies were valid and subsisting contracts, citing *Ruggiro v. Prudential Ins. Co.*, 113 N. J. Law, 561, 174 Atl. 882; *Life Insurance Clearing Co. v. Altschuler*, 55 Neb. 341, 75 N. W. 862; *Weddle v. Prudential Ins. Co.*, *supra*. This presumption is sufficient to sustain the burden of proof resting upon the plaintiff until the insurer introduces evidence to rebut it. *Weddle v. Prudential Ins. Co.*, *supra*; 1 Cooley, Briefs on Insurance (2d ed.) 668; *Ruggiro v. Prudential Ins. Co.*, *supra*. In the instant case the evidence of insurer did rebut the presumption.

Plaintiff further contends that the company is now estopped to insist upon its defense of a condition precedent, or to assert that the insured was not in sound health at the time of signing the revival applications; that such condition is waived by collection of the premiums after knowledge by the agent of the company of the illness of the insured, and that the agent recommended the reinstatement of the policies, as shown by the revival applications. Plaintiff cites 37 C. J. 405, which reads: "A waiver of, or estoppel to insist upon, a provision of the policy that no obligation is assumed by the company unless the insured is in sound health on the date of the policy may arise from a delivery of the policy or collection of premiums by an authorized agent possessing knowledge of the illness or unsound health of insured on the date of the policy."

Under the foregoing contention the defendant company would waive the nonliability provision by collecting premiums from February 22, 1937, to April 12, 1937. The defendant claims that it obtained its first knowledge of the illness of the insured on March 26, 1937, when claim blanks were received by it for weekly disability. The insured's niece testified that she went to the company's local office about a week after March 1 and reported the insured as ill; that he became ill February 28, 1937. The record is void of evidence that the company, through or by its agents, knew, until April 12, 1937, when a report was made to the company, the nature or extent of the insured's illness as being such as to have antedated his reinstatement. The applications for revival contemplated payment of premiums in arrears and continued payment of premiums to keep policies in force. The evidence is insufficient to charge the defendant with knowledge.

In *Supreme Lodge v. Grijalva, supra,* cited in *Van Dahl v. Sovereign Camp, W. O. W., supra,* the Arizona court said (p. 85) : "The doctrine of waiver is based on knowledge, and unless the statute clearly requires it, we should not hold that acceptance of past-due assessments on an insurance certificate which has automatically lapsed waives,

not only what the insurer already knows, to wit, that the payment is overdue, but also through *ex post facto* action (for that is the only way such result can be produced) reinstates the lapsed policy by a compulsory waiver of the very thing expressly stipulated as essential to reinstatement, and which the insured has agreed he warrants by the very offer of his money, and without which warranty it could not, and would not, have been accepted."

In the instant case there is evidence that the original policies had lapsed for nonpayment of premiums and were reinstated without an application for revival having been signed, and reinstatement was made on the books of the company. The one instance occurred on July 26, 1930, when six premiums in arrears were collected.

In *Koehler v. Modern Brotherhood of America,* 160 Mich. 180, 125 N. W. 49, cited in *Van Dahl v. Sovereign Camp, W. O. W., supra,* in speaking of proof of a custom of accepting delinquent premiums, the Michigan court stated that "this liberality should not be given the effect of waiving in advance subsequent delinquencies, thereby, in effect, abrogating the provisions of the contract and practically making a new one."

In the instant case the policies further provide that the failure of the collector to call for the premium will not be an excuse for nonpayment, as the insured will then be required to pay the premium at a branch office of the company, or remit the same direct to the home office. Under the evidence in this case, a finding of waiver or estoppel is not warranted.

Plaintiff objected to the testimony of Doctor Russell Best, the attending physician of the insured, as privileged. Section 20-1206, Comp. St. 1929, provides: "No practicing attorney, counselor, physician, surgeon, minister of the gospel or priest of any denomination, shall be allowed in giving testimony to disclose any confidential communication, properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of

practice or discipline." Section 20-1207, Comp. St. 1929, provides: "The prohibitions of the preceding sections do not apply to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred; and if a party to any action now pending, or hereafter brought, shall offer evidence with reference to his physical or mental condition, or the alleged cause thereof, * * * the right conferred" by section 20-1206, *supra*, "shall be deemed to have been waived as to any physician or surgeon who shall have attended said party or said deceased person."

In *Western Travelers Accident Ass'n v. Munson*, 73 Neb. 858, 103 N. W. 688, this court held: "A stipulation in a contract of life insurance to the effect that the proofs of death shall consist in part of the affidavit of the attending physician, which shall state the cause of death and such other information as may be required by the insurer, constitutes a waiver within the meaning of said sections, and renders the attending physician a competent witness as to the confidential disclosures made to him by the assured concerning his last sickness."

The policies in the instant case provide that proofs of death shall be accompanied by a physician's statement. Condition 5 of the smaller policy (exhibit 4) reads: "The insured shall not be entitled to any benefits for sickness or accident under this policy unless a certificate on the company's form by a regular licensed and practicing physician who is satisfactory to the company, showing the nature of the sickness or injury, shall first be furnished the company or its authorized agents. * * * The company shall have the right at its option to make such investigation into matters upon which any claim may be based or the subject thereof as it may deem necessary in order to determine its liability hereunder." The larger policy (exhibit 5) provides: "Proofs of death under this policy shall be made upon blanks to be furnished by the company and shall contain answers to each question propounded to the claimant, physicians and other persons, and shall contain the record, evidence and verdict of the coroner's inquest, if any be

held." The conditions contained in the policies, as herein stated, contemplate a waiver, on the part of the insured, of a privileged communication of his attending physician before his beneficiary can receive any benefits under the policies.

A competent annotator states: "Practically all the authorities—with exception of those from two jurisdictions, which are affected by the particular provisions of the statute on the point—recognize that the waiver by an applicant for an insurance policy, either in his application or in the policy itself, of the disqualification of his physician or surgeon to testify concerning confidential communications between them, is valid and binding upon those claiming any interest in the policy." 54 A. L. R. 412. See *Falkinburg v. Prudential Ins. Co.,* 132 Neb. 831, 273 N. W. 478.

Plaintiff contends that the court erroneously admitted the evidence of J. W. Zook, an agent of the company, who had previously testified in municipal court, by permitting his testimony to be read in the trial in the district court. This objection is without merit.

In *City of Ord v. Nash,* 50 Neb. 335, 69 N. W. 964, it was held: "Where a witness is shown to be absent from the state, his testimony given at a former trial of the same cause is admissible if otherwise unobjectionable." See *In re Estate of O'Connor,* 101 Neb. 617, 164 N. W. 570; *Jerich v. Union P. R. Co.,* 97 Neb. 767, 151 N. W. 310.

The record discloses that Mr. Zook had been transferred to Kansas City, and did not intend to remain in Omaha.

Other assignments of error, not herein discussed, are not pertinent to a decision in this case, and are incidental to the alleged errors committed by the trial court, hereinbefore discussed.

The plaintiff is entitled to judgment against the defendant for the amount of the premiums tendered by the insured to the company, in the sum of $14.40, and in addition thereto the sum of $126, representing the amount of the paid-up insurance due at the time said policies lapsed for nonpayment of premium, to wit, December 21, 1936.

We hold that the trial court properly sustained defendant's motion for a directed verdict.

AFFIRMED.