153 So. 627

### SOVEREIGN CAMP, W. O. W., v. LAMBERT.
### 7 Div. 222.

Supreme Court of Alabama.
March 8, 1934.

Rehearing Denied April 5, 1934.

Dortch, Allen & Dortch, of Gadsden, for appellant.

Alto V. Lee and E. G. Pilcher, both of Gadsden, for appellee.

BOULDIN, Justice.

The action is upon an insurance certificate issued by the Sovereign Camp of the Woodmen of the World.

The insured member, Talbert N. Lambert, had failed to pay the dues or assessments for the month of April, 1932, during said month, and likewise for the month of May.

On the evening of June 4th, these delinquent dues, as well as those for the month of June, were paid by the beneficiary to the financial secretary of the local camp.

On the same evening the insured member was fatally shot in a holdup at his store, and died early next morning. The financial secretary promptly reported the situation to the Sovereign Camp at Omaha, Neb., and was directed to forthwith return the money. The offer to return was refused.

The trial court took the view that, if the delinquent premiums or dues were paid to the local camp officer before the insured was shot, the insurance was reinstated, but, if paid thereafter, it was not in force.

The evidence was in sharp conflict as to the hour in the evening or night these dues were paid, and whether before or after the insured had been fatally shot.

Appellant insists this was an immaterial issue, and that defendant was entitled to the affirmative charge.

The contract, including the constitution and by-laws of the order, made part thereof, is the same as that set out in Sovereign Camp, W. O. W., v. Cox, 221 Ala. 59, 127 So. 847. See paragraph [1] of the opinion, pages 59 and 60 of 221 Ala., 127 So. 847, 848.

It is not here questioned that, upon failure to pay the dues of April and May within the months they were due respectively, the insurance was automatically suspended, the benefit certificate became void, and the relation of insurer and insured terminated, subject to the right to reinstate on the terms and conditions stipulated.

■ In addition to the stipulations touching reinstatement set out in the Cox Case, supra [one clause declaring the payment of delinquent dues "shall warrant that he is then in good health and that he will remain so for thirty days thereafter;" and the other, (66-b), that an "attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continues in good health for thirty days thereafter"], we note a further provision in related section 67, looking to reinstatement after suspension for more than three and less than six months on certificate of good health, saying: " * * * And upon receipt and acceptance of said health certificate and the money by the Secretary of the Association, and if said person shall remain in good health for thirty days following, he shall again become a member."

In the Cox Case, supra, the insured had pneumonia, and died before the money was received by the home camp at Omaha of which he was a member. Said this court: "It must be received while he is in good health, and he must remain so for thirty days thereafter in order to be completely and unconditionally restored to membership, according to the constitution and by-laws. The receipt of the money is expressly stated to be on those conditions." 221 Ala. p. 61, 127 So. 847, 849.

We are not disposed to depart from nor modify this statement of the law of such contracts.

■■ When for nonpayment of dues as per contract a benefit certificate in a fraternal insurance society is no longer in force, it is for the parties to stipulate whether, in any event, the insurance shall ever again be put in force. If suspended, subject to reinstatement, it is for them to stipulate the terms and conditions on which it shall again become effective. This is sound law everywhere recognized. Contracts stipulating that, upon full compliance with the terms of reinstatement, it shall become effective at the end of a stipulated period thereafter, and conditioned on good health at the end of such period, are upheld as to such condition. Melvin v. Piedmont Mutual Life Insurance Co., 150 N. C. 398, 64 S. E. 180, 134 Am. St. Rep. 943; American National Insurance Company v. Otis, 122 Ark. 219, 183 S. W. 183, L. R. A. 1916E, 875; Greenwaldt v. United States Health & Accident Ins. Co. of Saginaw, Mich., 52 Misc. 353, 102 N. Y. S. 157; 6 Couch Ency. Ins. Law, § 1376; American Nat. Ins. Co. v. Gallimore (Tex. Civ. App.) 166 S. W. 17.

There is no reason why a warranty may not be given touching future events over which the parties have no control. In other fields of law it is well known that parties may warrant against matters, known or unknown, which may materially concern the parties.

■ It is insisted the term "good health" should be·construed to mean free from disease or sickness materially affecting the insured as a life insurance risk; and that injury and death from accident or violence is not within the meaning of these provisions.

It seems to be conceded, and the court below ruled, that, if the insured had been fatally wounded before the money was paid, he was not then in good health, and the reinstatement never became effective, and this whether known to the beneficiary at the time she caused payment to be made or not.

We cannot find a rational ground to give two separate meanings to "good health" as used in the same clause of the contract.

We would not undertake to discover the reason or all the reasons why the parties stipulated for a thirty-day period of good health. We may note that in this contract a long list of extrahazardous lines of employment are warranted not to be the employment of the insured. Certainly life insurance risks are increased by the casualties of life.

Surely, if a man is no longer alive, if there be no subject of life insurance, good health as a condition on which the insurance is reinstated cannot exist. We cannot make contracts for the parties by inserting terms not expressed nor reasonably implied from those expressed; and therefore cannot say a want of good health as affecting a life insurance risk is limited to disease or sickness.

■■ It is further argued by appellee that there was a waiver of the suspension or forfeiture of the insurance.

The secretary of the Sovereign Camp at Omaha wrote the insured a letter of date of May 28th, which appears in the report of the case, requesting, we may say, urging the insured to pay up his delinquent dues.

Taken as a whole, it is no more than an invitation to reinstate the insurance as per contract. Indeed, the same letter purports to inclose and call attention to the very provisions of the contract relating to reinstatement. As stated in Sovereign Camp, W. O. W., v. Cox, 221 Ala. 59, 127 So. 847, the insured is presumed to have known the import of the contract to which he was so referred. Merely speaking of the unpaid dues as "delinquent installments" imports no modification of the contract, nor waiver of its terms.

**444**

Our conclusion is defendant was due the affirmative charge, requested in writing.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.