## SOVEREIGN CAMP, W. O. W., v. PIPER et al.

### No. 8388.

Circuit Court of Appeals, Fifth Circuit.

Dec. 10, 1937.

Volney M. Brown and J. C. Brooke, both of El Paso, Tex., for appellant.

Gowan Jones, of El Paso, Tex., for appellees.

Before SIBLEY and HOLMES, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

Mrs. Eunice Piper (by a subsequent marriage now Eunice Hicks) sued the Sovereign Camp of the Woodmen of the World, a fraternal benefit society incorporated in Nebraska, upon two participating insurance certificates for $2,000 each issued in March, 1934, to her then husband in which she was named beneficiary. The suit was removed from the state court and tried by the District Judge on a waiver of jury. He made special findings of fact and conclusions of law, and gave judgment for the plaintiff. The Sovereign Camp appeals, having by appropriate motion for other findings saved some ques-

tions of fact as well as of law which will be discussed.

The general controversy is whether an agreement with the Financial Secretary of the Local Camp to which Piper belonged, touching the mode of paying the monthly dues on the insurance, prevented suspension of the certificates for nonpayment promptly of dues for the months of December, 1934, and January, 1935, they not having been received by the Financial Secretary till February 7, 1935, and the insured dying that afternoon. It will be needful to state the contracts, and then the facts proven.

The two certificates, each issued March 31, 1934, are for different plans of insurance, but are substantially alike in the matters here important. They were issued pursuant to and in exchange for a certificate issued in March, 1926, the application for the exchange stating: "It is understood and agreed that my original application for membership upon which the certificate herewith surrendered and cancelled was issued, this application, and the Constitution and By-Laws of the Association now in force or hereafter adopted shall enter into and form a part of said new certificate." The original application contained this: "I agree to make all payments for which I may become liable while a member of the Society as required by its Constitution and By-laws as now in force or that may hereafter be adopted, and at the time and in such manner and amount as may be provided by said laws, and if I do not make said payments at the time and for the amount required and provided in the Constitution, Laws and By-Laws of the Society, the Certificate issued upon this application shall be null and void. * * *" Each of the new certificates stated on its face the amount to be paid monthly "on or before the last day of each month," and each refers to the constitution and by-laws and the application as part of the contract. Each also contains this indorsement: "Important. No Camp or officer thereof, nor any officer, employee or agent of the Sovereign Camp, has authority to waive any of the conditions of this beneficiary certificate or of the Constitution and By-Laws of this Association." The constitution and by-laws, section 63, provide for the accumulation of a fund to pay beneficiary certificates by annual or monthly dues fixed in the certificates. "If he (the member) fails to make any such payment on or before the last day of the month he shall thereby become suspended, his beneficiary certificates shall be void, the contract between such person and the Association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained," etc. Section 64 states: "A person who becomes suspended for nonpayment of assessments or installment of assessment is not entitled to any benefits of this Association." Section 65 is: "Any person who has become suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member. * * * Provided that the receipt and retention of payment of such installments of assessments, in case such person is not in good health, shall not make such person a member or entitle him or his beneficiary to any rights whatever." Section 66 emphasizes what has just been quoted and expressly says that "there shall be no waiver or estoppel by receiving such payments and if the warranty of good health is not true the certificate shall be null and void."

Touching the authority of officers, section 82 provides that no officer, employee, or agent of the Sovereign Camp has power to waive, change, or vary the conditions on which the certificates are issued nor the provisions of the constitution or by-laws, nor shall any custom of any Camp, with or without the knowledge of any officer of the association, have such effect; nor shall the knowledge or act of an officer or employee of the association constitute a waiver or estoppel thereabout. As to the Financial Secretary of the Local Camp, who is stipulated to be "the agent and representative of the Sovereign Camp for the collection of premiums or monthly dues on certificates of insurance of the various members in such local

camp," the section provides: "The Financial Secretary shall not by acts, representations or waivers, nor shall the Camp by vote or otherwise, or any of its officers have any power or authority to waive any of the provisions of the Constitution, Laws and By-Laws of this Association, nor to bind the Sovereign Camp by any such acts."

The proven facts are that Piper from the beginning was much absent from home and for the last two years lived several hundred miles from his Camp. To facilitate his monthly payments he agreed with a local merchant, Higginbotham, that the latter should make the payments, and with the Financial Secretary that he would each month call on Higginbotham for the payment and leave with him the official receipt. This was done for nine years, but the Secretary, more often than not, did not call during the month but during the first week of the following month, just before making his report of collections to the Sovereign Camp. He would report the payments as made during the preceding month and in time, though his own record and the stamp on his official receipts showed the true date of payment. The payment for December, 1934, was not collected at all, for what reason does not appear, and on January 8th the Financial Secretary reported Piper as unpaid and he stood suspended on the records of the Sovereign Camp. The installment for January also was not collected, but no one appears to have notified Piper of either default. He fell ill with pneumonia on February 4, and remembering that some change of management had occurred on January 1 at Higginbotham's store, he had his wife write and then to telegraph Higginbotham on February 6 to ask about the payments. Higginbotham telegraphed on the morning of February 7th: "Insurance item paid. Hoping Albert gets better fast." The December and January dues were paid that morning, but Piper died that afternoon. The payment was remitted by the Financial Secretary to the Sovereign Camp, he not knowing of Piper's illness. On February 20th he advised the Sovereign Camp of Piper's death, and the payment was at once refunded, but the refund was not accepted.

■ The insurance contract that the assessments be paid by the last day of each month is clear and unambiguous. Unless they are paid as agreed, the fund to pay certificates cannot be kept up. Time is of the essence in making payments. Failure to pay by the time fixed suspends the member and voids his certificate. If the December dues were not paid till February 7th, according to the contract Piper stood suspended since January 1st. He had the right, however, if in good health, to reinstate himself within ninety days by paying up all arrearages, as was done on February 7. Neither the Financial Secretary nor the Sovereign Camp could refuse to accept the payment. But it carried a warranty of present good health and that good health would continue for thirty days. This warranty was broken for Piper was desperately ill when the payment was made and died that day. There could be no waiver of or estoppel against the warranty, for both the Financial Secretary and the Sovereign Camp were ignorant of the illness, and the official receipts state that if the person has been suspended, the money is received on the condition and agreement that there shall be no restoration to membership except as provided by the constitution and by-laws. Compare Globe Mutual Life Ins. Co. v. Wolff, 95 U.S. 326, 24 L.Ed. 387. Since the circumstances of this payment do not show a waiver of the warranty nor any reason to raise an estoppel, we need not examine the effort of the by-laws to exclude waiver and estoppel from the authority of its agents. We agree with the District Judge that no reinstatement is shown and no estoppel to deny suspension by receiving the payment of February 7th. Sovereign Camp, W. O. W. v. Cameron, Tex.Civ. App., 41 S.W.2d 283; Sovereign Camp, W. O. W. v. Lambert, 228 Ala. 440, 153 So. 627.

■ The District Judge held that by reason of the agreement and custom touching the making of payments Piper was never suspended. Neither the agreement nor a course of action of the Financial Secretary could do away with the necessity of payment as provided by the certificates and by-laws. The provision of both denying authority to any agent to waive or change the terms of the contract are too plain. But there is no provision as to the place or manner of payment, and the Financial Secretary is the Sovereign Camp's sole agent for collection. When he receives a payment, the Sovereign Camp is paid though he delays to remit it. Supreme Lodge, K. P. v. Withers, 177 U.

S. 260, 20 S.Ct. 611, 44 L.Ed. 762. The payment ought to be made in the medium by which debts are discharged, money or its equivalent, but the Financial Secretary is not limited as to the place and mode of payment to him. If he consents to accept checks or drafts, and good ones are sent him, he could not cause a suspension by not presenting them till after the last day of the month. If he agrees that money should be left for him at a stated place, say Higginbotham's, and it is left there in time, his failure to go thither and get it would not be a failure to pay. Such instances would involve no change in the insurance contract, and no waiver of its provisions or estoppel to assert them. The required payments would have been made; in an unusual way, but in a way appointed by the collecting agent and not excluded from his authority. Such delay as might occur in his actually getting the money would be his delay and not the insured's. It would, of course, be otherwise if the check sent was bad, or if the payment failed by other fault of the payer. We think the tripartite arrangement made here is in substance an authority given by the Financial Secretary to have the money for him at Higginbotham's at the appointed times, and is the equivalent of a general order by Piper on Higginbotham to make payments on demand which Higginbotham agreed to honor and which the Financial Secretary undertook to present. A delay by the Financial Secretary to present this verbal draft, or to call for the money, there being no fault or failure on Piper's part, would not be a failure of Piper to pay. In legal contemplation the money in Higginbotham's hands which the Financial Secretary could at any time get was in his own hands.

The evidence is silent as to whether the Financial Secretary failed to call for the money or whether he called and Higginbotham refused to pay. The Judge found that funds were at all times on hand ready to be paid the Financial Secretary, and no contrary finding was requested. That conclusion may be supported by the circumstances that Higginbotham had always paid when called upon and did pay when Mrs. Piper telegraphed him. The burden was on the Sovereign Camp to show fault in Piper in view of the arrangement made and its long operation. It has been held by the Texas Supreme Court that in such circumstances it is the duty of the

Sovereign Camp and of the Financial Secretary to give notice to the member of a refusal of the third person to pay, and a failure to give effective notice would estop to suspend the insurance for such refusal. Johnson v. Sovereign Camp, W. O. W., 125 Tex. 329, 83 S.W.2d 605. Other Texas cases have founded a waiver or estoppel on a long continued practice of receiving overdue payments. Supreme Lodge, K. of P. v. Hooper, Tex.Civ.App., 282 S.W. 867; Sovereign Camp, W. O. W. v. Helm, Tex.Civ.App., 70 S.W.2d 213; Sovereign Camp, W. O. W. v. Moraida, Tex.Civ.App., 85 S.W.2d 364. The authority of the Financial Secretary is further discussed in Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S.W. 456, 288 S.W. 115, 47 A.L.R. 876, and Sovereign Camp, W. O. W. v. Hines, Tex.Civ.App., 273 S.W. 927. Without ruling on the necessity of a notice or the availability of estoppel, we rest our decision on the finding of the Judge that the money was at the proper time ready for the Financial Secretary at the agreed place and finally reached his hands, holding that this is to be esteemed timely payment.

Judgment affirmed.